WAGNER et al. v. CENTRAL BANKING & SECURITY CO. *

(Circuit Court of Appeals, Fourth Circuit. January 9, 1918.)

No. 1542.

1. ASSIGNMENTS ⬧126—ACTIONS BY ASSIGNEE—DEFENSES.
    All defenses and set-offs available against an assignor of a chose in action are available against his assignee.

2. BANKS AND BANKING ⬧117—TRANSACTIONS BETWEEN BANKS—REPRESENTATION BY OFFICERS.
    Officers of bank A executed their individual notes to each other, which they indorsed and, attaching a guaranty by the bank, discounted them with a correspondent bank, B. Although bank A did not own nor indorse the notes, it was agreed that their proceeds should be placed to its credit by bank B, and that the greater part of such credit should remain untouched until the notes were paid. The greater part of the amount of the notes was subsequently charged to the account of bank A. The only entry of the transaction on its own books was the charge of the amount of the deposit to bank B, and the same amount was placed to the credit of the individual officers or others designated by them. The guaranty of the notes was not authorized by the directors of bank A, and sufficient appeared in the transaction to charge bank B with notice that it was for the personal benefit of the makers of the notes and not of their bank. *Held* that, on a subsequent settlement, bank B could not enforce such charges against bank A, which derived no benefit therefrom, on the principle that, where one of two parties must suffer from the fraud of a

<hr>

⬧For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

third, the loss must fall on him who by his imprudence or co-operation enabled such third party to commit the fraud.

3. BANKS AND BANKING &#8258;109(1)—REPRESENTATION OF BANK BY OFFICERS—INDORSEMENT OR GUARANTY.

An officer of a bank without express authority from the directors has no power to bind the bank by an accommodation indorsement or guaranty, and an attempted guaranty of notes that the bank has never owned is illegal, unless for the benefit of the bank in the conduct of its business.

4. BANKS AND BANKING &#8258;117—REPRESENTATION OF BANK BY OFFICERS—INDIVIDUAL INTEREST OF OFFICER.

There is a dead line between the area of official representation of a bank by its officers and the area of their personal interest, and when they cross that dead line, to the knowledge of one with whom they are dealing, they leave behind all power of representation.

Cross-Appeals from the District Court of the United States for the Northern District of West Virginia, at Parkersburg; Alston G. Dayton, Judge.

Suit in equity by the Central Banking & Security Company against P. E. Wagner, receiver of the First National Bank of Sutton, W. Va., and another. From the decree, all parties appeal. Reversed.

Connor Hall and D. C. T. Davis, Jr., both of Charleston, W. Va. (Davis, Davis & Hall, of Charleston, W. Va., on the brief), for appellants and cross-appellees.

C. D. Merrick and B. M. Ambler, both of Parkersburg, W. Va., for appellee and cross-appellant.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. On January 15, 1914, a contract was made between the Farmers' Bank & Trust Company of Sutton, W. Va., and the First National Bank of Sutton, which was intended as a transfer of the business and the commercial assets of the Farmers' Bank to the First National Bank. By the contract the Farmers' Bank turned over to the First National Bank cash, notes, and other assets to the amount of $198,506.31. The First National Bank assumed liability for the Farmers' Bank's deposits, balances, and notes due to other banks to the amount of $203,970.02. For the difference, $5,463.71, between the liabilities assumed and the assets turned over the Farmers' Bank gave its note. Assets and liabilities were carefully specified and scheduled. Among the assets of the Farmers' Bank so assigned was a balance of $7,694.94 appearing on its books as due to it by the Central Banking & Security Company of Parkersburg, W. Va. For this balance the Farmers' Bank made a draft on the Central Bank in favor of the first National Bank. The Central Bank had at this time a note of H. H. Dean and a note of T. G. Dean, his brother, each for $5,000 indorsed in the name of the Farmers' Bank by H. H. Dean as treasurer which it had discounted, placing the proceeds to the credit of the Farmers' Bank. As a condition of paying the draft of $7,694.94 by transferring the credit from the Farmers' Bank to the First National Bank, the Central Bank stipulated that these notes should be replaced by similar notes indorsed by the First National Bank, under

authority of a resolution to be adopted by the board of directors of the First National Bank. These Dean notes did not appear at all on the books of the Farmers' Bank; and the paper purporting to be a copy of a resolution authorizing discounts with the Central Bank was fictitious, the Central Bank accepting the certificate of authenticity of Dean alone as vice president to the fictitious resolution. On the faith of this fictitious resolution the Central Bank charged to the First National Bank the Dean notes for $10,000, purporting to be indorsed by the Farmers' Bank, and credited to the First National Bank the new Dean notes, purporting to be indorsed by the First National Bank.

The First National Bank continued business with the Central Bank until August, 1914, when it failed and P. E. Wagner was appointed receiver. At the date of suspension there was a balance appearing on the books of the First National Bank in its favor against the Central Bank of $9,161.91. This balance the Central Bank refused to pay, alleging a liability of the First National Bank to it as indorser on several notes, two of them being notes of H. H. Dean for $5,000 and $500, and one of them a note of T. G. Dean for $5,000. In July, 1915, P. E. Wagner, as receiver of the First National Bank, brought an action to recover the alleged balance of $9,161.91 due by the Central Bank. Thereafter, on September 1, 1915, the Central Bank instituted this suit in equity to enjoin the action of the receiver, alleging that by reason of the liability of the First National Bank as indorser of the notes of the Deans and of other persons, the First National Bank would be indebted to it on settlement to the amount of $3,612.90. Confirming the report of the master in all respects, the District Court entered a decree in favor of the Central Bank against the First National Bank for $807.28. Both parties appeal.

The claim of the receiver now is that a balance of $6,891.11 should have been found in favor of the First National Bank against the Central Bank, after allowing all proper credits and charges. The claim of the Central Bank is that the balance found in its favor should have been $3,108.09.

[1, 2] The mere fact that the First National Bank, in acquiring the chief assets of the Farmers' Bank on January 15, 1914, purchased the balance of $7,694.94 appearing on its books against the Central Bank, without notice of defenses or set-offs against the Farmers' Bank, did not deprive the Central Bank of the benefit of such defenses or set-offs. All defenses and set-offs available against an assignor of a chose in action are available against his assignee. New York, etc., Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380. The First National Bank having acquired by the assignment of the balance all the rights, both legal and equitable, of the Farmers' Bank, and nothing more, the main question upon which the case hinges is what was the real balance in favor of the Farmers' Bank against the Central Bank on January 15, 1914, the date on which it was assigned to the First National Bank. The effort to arrive at this balance requires analysis of somewhat complex transactions of earlier dates.

H. H. Dean was treasurer of the Farmers' Bank, and on January 15, 1914, when that institution transferred its active business and assets, he became vice president of the First National Bank. He was the active

managing officer of each institution; the other directors and stockholders relying largely upon him. He was faithless to both trusts.

In November, 1909, the Central Bank, at the request of Smith, Mollohan, and Dean, all officers of the Farmers' Bank, discounted a note of Mollohan for $5,000, payable on demand to Smith, and indorsed by him, and a note for $4,450 of Smith and Mollohan, payable on demand to themselves, and indorsed by them, to which was attached as collateral 50 shares of stock of the Farmers' Bank. These notes were not indorsed by the Farmers' Bank, and there was nothing to indicate that they had ever been its property. Nevertheless, the Central Bank took them on a guaranty made in the name of the Farmers' Bank by Smith, and by Dean as treasurer and Mollohan as vice-president. These persons also undertook to contract further in the name of the bank that the proceeds should be credited to the Farmers' Bank, and that the notes might be. charged to its account at any time, and that at least $7,500 of the credit should remain untouched until the notes were paid. It was also agreed that the Central Bank should charge 6 per cent. on the discount and allow 3 per cent. on the balance. There was no resolution of the board of directors authorizing the use of the Farmers' Bank's name in such a transaction as guarantor or otherwise. The whole amount, $9,450, was credited to the Farmers' Bank; the only entry on the books of the Farmers' Bank relating to the transaction was a corresponding charge against the Central Bank, "Notes, $9,450," which was disposed of at Mollohan's direction by crediting $2,500 to the account of Mollohan and the remainder to two trust companies. As no indebtedness of the Farmers' Bank to Mollohan or to these trust companies appears justifying these entries, the inference follows that the proceeds of the notes were thus disposed of for the private purposes of Smith, Mollohan, and Dean, as the evidence shows was clearly the design of the transaction.

On September 1, 1911, the Smith and Mollohan notes were canceled by a new note of S. M. Smith for $2,225 and a charge made against the Farmers' Bank for $7,225. These transactions were admittedly out of the usual course of business. Langfitt, the treasurer of the Central Bank, when he afterwards became uneasy as to the solvency of the makers of the notes, earnestly requested payment or a resolution of confirmation by the directors of the Farmers' Bank, saying in his letter to Dean, treasurer, of August 19, 1911:

"In justice to yourself, you should either secure the payment of these notes, or secure renewals, or rather new notes for same, and pass them through your books as regular rediscount matter, as it is unusual with banks to guarantee for their customers without specific instructions from their board of directors."

[3] The absence of the indorsement of the Farmers' Bank showed that the notes had never been its property. The attempted guaranty of notes that a bank has never owned is not only unusual, but illegal, except for the benefit of the bank in the conduct of its business. An officer of a bank, without express authority from the directors, has no power to bind the bank by an accommodation indorsement or guaranty. West St. Louis Savings Bank v. Shawnee County Bank, 95 U. S. 557, 24 L. Ed. 490. There was nothing before the Central Bank,

and there is nothing in the record, to show that the Farmers' Bank needed funds, or was unable to raise them on its own resources, or that there was any necessity for it to carry any fixed balance with the Central Bank to meet notes which it had never owned.

The application for the loan was made by Smith individually, and not as an officer of the bank, and he pledged his own stock to secure it. The letter of Dean, as treasurer, to the Central Bank, guaranteeing the notes, recites that they were discounted for Smith and Mollohan; thus indicating clearly that the Farmers' Bank was being used merely as an instrumentality to obtain money from that bank for its officers. The Central Bank thus had full notice from the whole course of the transaction that the discount was not for the benefit of the Farmers' Bank, but of Smith, Mollohan, and Dean, who undertook to bind it. It is evident, therefore, that if the Central Bank had paid the proceeds of the notes to these persons, it could not have held the Farmers' Bank liable on the attempted guaranty. West St. L., etc., Bank v. Shawnee, etc., supra; First National Bank v. Drovers' & Mechanics' Nat. Bank, 244 Fed. 135, —— C. C. A. —— (4th Cir. July 12, 1917).

But it is earnestly insisted that, since the Central Bank gave the Farmers' Bank credit for the proceeds of the note, the balance $7,-694.94 appearing on its books in favor of the Farmers' Bank being a result of that credit, neither the Farmers' Bank nor its assignee, the First National Bank, could recover this balance without assuming liability for the notes which produced it. The general rule is well settled that a bank cannot take the benefit of an illegal or fraudulent transaction of its officer, and repudiate the obligation out of which the benefit arose. National Bank v. Petrie, 189 U. S. 423, 23 Sup. Ct. 512, 47 L. Ed. 879; People's Bank v. National Bank, 101 U. S. 181, 25 L. Ed. 907; Rankin v. City National Bank, 208 U. S. 541, 28 Sup. Ct. 346, 52 L. Ed. 610. But the question here is deeper than that. As we have seen, the Central Bank was chargeable with notice that Smith, Mollohan, and Dean negotiated the notes for the purpose of raising money for themselves. This design could only be accomplished by drawing from the Farmers' Bank the amount which had been credited by the Central Bank to the Farmers' Bank. That this was the natural and inevitable sequence of the transaction must have been evident to the officers of the Central Bank. It was in this transaction that the loss to the Farmers' Bank occurred. This loss runs through the entire account, and the case turns on the responsibility of the Central Bank for it.

Doubtless the officers of the Central Bank were guiltless of any formed purpose to defraud the Farmers' Bank. They no doubt expected both banks to be saved harmless by the payment of the notes by the makers. But when the Central Bank was put on notice of the scheme of the officers of the Farmers' Bank to use its guaranty for their individual benefit and entered into that scheme, the Central Bank became party to it, and took on itself, as a participant in the transaction with notice of its purpose, all the risk of resulting loss to the Farmers' Bank into whose affairs it unwarrantably entered for the benefit of its officers. The transaction must be looked at in its en-

tirety and the consequent loss must fall on all the wrongdoers severally and jointly, to the exemption of the Farmers' Bank, whose rights they undertook to invade.

[4] Where one of two parties must suffer from the fraud of a third party, even if both are innocent, the loss must fall on him who by his imprudence or co-operation enabled such third party to commit the fraud. Western Union Cold Storage Co. v. Bankers' Natl. Bank, 176 Ill. 260, 52 N. E. 30; Western Union Tel. Co. v. Schriver, 141 Fed. 538, 72 C. C. A. 596, 4 L. R. A. (N. S.) 678; 12 Rul. Cas. L. 401. Attributing to Dean, Mollohan, and Smith full power to manage the credits of the bank of which they were officers, the instant they proposed a breach of trust by using the bank's name for their own benefit, and the Central Bank accepted the proposition, Dean, Mollohan, and Smith were stripped of their representative character and their power to bind the Farmers' Bank. By its first step taken in the matter thereafter the Central Bank tied itself to Smith, Mollohan, and Dean as a participant in their breach of trust. There is a dead line between the area of personal interest and the area of official representation. When the officers of the Farmers' Bank crossed that dead line to the knowledge of the Central Bank they left behind all power of representation. Thereafter the Central Bank and the officers of the Farmers' Bank were jointly and severally responsible for any damage which resulted to the Farmers' Bank from their unwarranted dealing with its credit and money.

Applying this rule, since the Central Bank had enabled Smith, Mollohan, and Dean to appropriate $9,950 of the Farmers' Bank's money by means of an entry on its books in favor of the Farmers' Bank for that amount, it was bound by that entry, and could not afterwards discharge itself by charging to the Farmers' Bank the notes of Smith and Mollohan for which the Farmers' Bank was never liable. In other words, Mollohan having paid $2,225 of the $9,550, the net loss to the Farmers' Bank was $7,225 and interest, and this loss the Central Bank must bear. It is true that the burden of showing the fraud— that is, that the name of the Farmers' Bank was used for the benefit of Smith, Mollohan, and Dean, and that the Central Bank entered into the transaction with notice of that intention—was on the receiver. Rankin v. Chase Bank, 188 U. S. 557, 23 Sup. Ct. 372, 47 L. Ed. 594. But as we have seen, the receiver discharged that burden. He showed further that the proceeds of the notes were misapplied by putting them to the credit of Mollohan and to two trust companies at Mollohan's instance. When this proof was made, the obligation then fell upon the Central Bank to show that the proceeds of the notes so apparently misapplied were actually used for the benefit of the Farmers' Bank. Western National Bank v. Armstrong, 152 U. S. 346–351, 14 Sup. Ct. 572, 38 L. Ed. 470. This obligation the Central Bank failed to discharge.

It follows that in arriving at the real balance due to the Farmers' Bank by the Central Bank, the charge to the Farmers' Bank of $7,225 and $97.65, interest thereon, aggregating $7,322.65, representing the unpaid portion of the notes of Smith and Mollohan, must be canceled.

At and after the time that the Central Bank charged to the Farmers' Bank $7,322.65 of the principal and interest of the Smith and Mollohan notes, Dean discounted at the Central Bank two notes, one of himself and one of his brother, T. G. Dean, each for $5,000, indorsing them in the name of the Farmers' Bank, as already stated. In this instance, also, the correspondence and all the circumstances furnished ample notice to the Central Bank that the discount was for the benefit of Dean and not of the Farmers' Bank. The discount seems however, to have been made for the purpose of renewing the credit of the Farmers' Bank on the books of the Central Bank which had disappeared, when the Mollohan and Smith notes were charged, to the extent of $7,322.65, and concealing the misappropriation of the funds in that transaction. The net proceeds were placed to the credit of the Farmers' Bank and there is no sufficient evidence in the record that Dean on this occasion and on the faith of these notes withdrew from the Farmers' Bank any funds for his own use. These notes were renewed from time to time, the last renewal being under the indorsement of the First National Bank which Dean essayed to make as vice president. Corresponding debits and credits were made at the renewal of the notes. This being so, both the indorsement in the name of Farmers' Bank, and the First National Bank on the notes, and also the credits given for their net proceeds, should be canceled. The Central Bank having notice that they were made for the benefit of Dean and not for the benefit of the Farmers' Bank or the First National Bank cannot set them up. The Farmers' Bank and the First National Bank not having shown any loss on account of them cannot claim their proceeds in the credit which they produced.

The evidence is too plain for discussion that the Central Bank discounted the other note of $500 for Dean individually with knowledge that the First National Bank was to derive no benefit from it, and that the District Court was right in refusing to charge it to the First National Bank. The result is that the decree of the District Court should be in favor of P. E. Wagner, receiver, for such balance as may remain in favor of the First National Bank, as assignee of the Farmers' Bank, after disallowing the charge of $7,322.65 entered by the Central Bank against the Farmers' Bank on September 1, 1911.

The decree of the District Court is therefore reversed.