## FARMERS' & MINERS' BANK et al. v. BLUEFIELD NAT. BANK, et al.*

(Circuit Court of Appeals, Fourth Circuit. January 12, 1926.)

No. 2413.

1. **Banks and banking** ⬤⟹260(4).

A national bank has not power to lend its credit by becoming surety, indorser, or guarantor for another.

2. **Banks and banking** ⬤⟹109(1).

Officer of bank without express authority from its directors has not power to bind it by an accommodation indorsement or guaranty.

3. **Banks and banking** ⬤⟹260(4)—Bank discounting corporation's notes at request of national bank cannot recover on oral guaranty alone.

Bank discounting notes for corporation at request of executive officer of national bank desiring to establish a credit for the corporation cannot recover of the national bank on an oral guaranty of the notes.

4. **Banks and banking** ⬤⟹260(4).

National bank may warrant title to property conveyed or indorse or guarantee obligations rediscounted or sold by it.

5. **Banks and banking** ⬤⟹261(3)—Bank rediscounting notes in reliance on national bank's oral guaranty may recover benefits received by national bank irrespective of validity of guaranty.

Bank rediscounting corporation's notes at request of officer of national bank, which was not the owner thereof, in reliance on oral guaranty, on showing that national bank received part of proceeds, may recover from it to the extent of its benefit, irrespective of validity of guaranty.

6. **Banks and banking** ⬤⟹227(3)—Bank held not entitled on evidence to recover of national bank on alleged oral guaranty of discounted notes.

Bank seeking to recover of national bank on oral guaranty of corporation's notes discounted at bank's request *held* not to have shown that national bank was either owner of notes, thus validating its guaranty, or recipient of part of proceedings liable irrespective of guaranty.

In Error to the District Court of the United States for the Southern District of West Virginia, at Bluefield.

Action by the Farmers' & Miners' Bank and H. M. Browning, receiver thereof, against the Bluefield National Bank and another. Judgment for defendants, and plaintiffs bring error. Affirmed.

William H. Werth, of Tazewell, Va., for plaintiffs in error.

D. E. French (French, Easley & Easley, of Bluefield, W. Va., on the brief), for defendants in error.

*Certiorari denied 46 S. Ct. 483, 70 L. Ed. ——.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

ROSE, Circuit Judge. The parties occupied below the same relative positions as they do here; that is, the Farmers' & Miners' Bank, a Virginia corporation, and H. M. Browning, its receiver, a citizen of that state, were the plaintiffs, and the defendants were the Bluefield National Bank, a national banking association located and doing business in West Virginia, and R. B. Parrish, its active vice president and its chief executive officer, who was a citizen of the latter state. We will refer to them by the positions they occupied below.

The suit was to recover $8,000 and interest, the aggregate amount of two notes for $4,000 each, held by the plaintiff bank. The Tazewell Timber Corporation was the maker of these notes. They were each indorsed by two other corporations, neither of whom are parties to this cause. They are not indorsed by either of the defendants, nor is it contended that either of them ever in writing assumed any liability with reference to the paper in question. The plaintiffs' claim to recover is based upon what it asserts was an oral guaranty given its then cashier, one Wylie, by the defendant, through Parrish. Wylie testified and gave his version of what happened.

Some time in 1920 and before August 2d, he had a conversation with Parrish. He says that the latter then told him the Tazewell Timber Corporation wished to open an account with the defendant bank and desired a line of credit for $50,000. At that time, as both of them knew, the combined capital and surplus of the defendant bank was around $110,000, so that the maximum loan which the statute permitted it to make to any one borrower was in the neighborhood of $11,000. In answer to a question in cross-examination, he stated that Parrish said the defendant bank could not grant the credit asked for unless it could get other banks to carry a portion of it. In this connection the witness testified that he supposes that Parrish asked him if the plaintiff bank could not carry part of the loan for "him" (Parrish), and that he replied that his bank would be glad to do so. Wylie remembered that Parrish talked to him about the financial condition of the Tazewell Timber Corporation and its proposed indorsers, but he said if Parrish handed him correspondence and financial reports concerning them he (the witness) just glanced at them. At one time he testified that Parrish said he would see that the notes

were paid, but that appears to be his understanding of the effect of what was said, for the exact words of Parrish, according to the witness, were: "Whenever the board of directors of the Farmers' & Miners' Bank wanted the notes paid, he would have them taken up." He added that he did not remember whether Parrish said anything about placing them at other banks at that time or not.

Following this conversation, on August 2, 1920, Parrish wrote plaintiff bank a letter in which he said: "Inclosed you will find two notes of Tazewell Timber Corporation of $4,000 each at 90 days. These are the notes that I spoke to you about some time ago. I hope you can use both of them for us and if so please credit our account with the proceeds, $7,878.40." When the notes arrived the plaintiff bank was rather short of funds and could not conveniently handle both of them. It returned one and discounted the other, putting the net proceeds, $3,939.20, to the credit of defendant bank and so advised the latter. Shortly thereafter witness was again in Bluefield and saw Parrish, whom he told that if he would return the other note it would be discounted also, and this was done; the entries concerning it being of the same kind as those made with reference to the note first discounted. In this second interview with Parrish, the latter said that both notes had been charged by the defendant to the plaintiff bank on August 2, when they were both sent down to it and the matter had since been held in abeyance. The two banks, plaintiff and defendant, had a running account between themselves, the items of which were reconciled from time to time by the transfer of funds through credits in any other bank, as might be desired by the plaintiffs or by defendant. Defendant never drew directly on plaintiff by check or draft, the account being handled by offsetting the entries carried. The defendant never drew a check against the two specific credits given on account of the two notes in question. Their maker never had any deposit account in the plaintiff bank, and the notes were not charged or their proceeds credited to it.

Wylie says that the notes were reported by him to the discount committee and directors of plaintiff bank, and those gentlemen knew that the notes were not indorsed by the defendant bank and that the witness had discounted them at the request of Parrish for the Tazewell Timber Corporation. At one time in his cross-examination and in answer to the question why he had not requested defendant's indorsement, he said, "Well, that is

a question hard for me to answer." At another time, he testified that "he had not asked for an indorsement, because I took Mr. Parrish's word * " * that he would take the paper any time I called on him for doing it." He explained that if the defendant bank had indorsed the notes, it would have been a contingent liability, and "I do not think he" (Parrish) "wanted that." "If they had been indorsed, they would have had to have reported them as a contingent liability." It may be said, and the observation is our own, that the valid guaranty of their payment would equally have created a contingent liability for them; the only practical difference being that they were not as likely to come to the attention of the bank examiners.

[1-4] For the moment, and for the moment only, let it be assumed that what Wylie testified Parrish said amounted to a guaranty on behalf of the defendant bank of the payment of the notes. In the federal courts, it is well settled that a national bank has not power to lend its credit to another by becoming surety, indorser, or guarantor for him. Merchants' Bank v. Baird, 160 F. 642, 90 C. C. A. 338, 17 L. R. A. (N. S.) 526. And it is still more clear that, as we ourselves have said, no officer of the bank, without express authority from its directors, has power to bind it by an accommodation indorsement or guaranty. Wagner v. Central Banking & Security Co., 249 F. 145, 161 C. C. A. 197. If, then, the transaction was as the plaintiffs' witness Wylie says the directors of the plaintiff bank knew it to be, namely, that he (Wylie) had discounted the notes at the request of Parrish for the Tazewell Timber Corporation, it is clear that the learned judge was right in directing at the close of the plaintiffs' testimony a verdict for the defendants. It is, however, equally well established that a national bank may validly warrant title to the property it conveys, or become liable as an indorser or guarantor of notes or other obligations which it rediscounts or sells, because to do so is incidental to the business it is authorized to transact and to the disposition of property it has lawfully acquired. People's Bank v. National Bank, 101 U. S. 181, 25 L. Ed. 907. It follows that if there was evidence sufficient to show that the notes in question were ever owned by the defendant bank and that it sold them to the plaintiff bank or rediscounted them with it, plaintiff was entitled to go to the jury, assuming, of course, that what Parrish said amounted in law to a guaranty by the defendant bank.

[5] There is still another contingency by which the plaintiff might have been entitled to a complete or partial recovery. If the defendant bank had never owned the notes, and if the plaintiff bank rediscounted them but had done so on the faith of the guaranty of the defendant bank or of one of its officers, and the proceeds of such discount had gone to the benefit of the defendant bank, the latter would be liable to return the money it had thus received whether its officer was authorized to give the guaranty on its behalf or not, and irrespective of any lack of power there might have been to have conferred such authority, if it had attempted to do so. Aldrich v. Chemical National Bank, 20 S. Ct. 498, 176 U. S. 618, 44 L. Ed. 611; Citizens' National Bank v. Appleton, 30 S. Ct. 364, 216 U. S. 190, 54 L. Ed. 443; Richmond Guano Co. v. Farmers' Cotton Seed Oil Mill & G. Co., 126 F. 717, 61 C. C. A. 630.

[6] What evidence is there in the record to show that the defendant bank ever owned these notes or ever applied to its own use their proceeds or any part of them? It may be said that, unless the testimony shows that the notes once belonged to the defendant, there is none that it ever received for itself any part of the proceeds of their discount. It is true that when the plaintiff bank discounted them, it put their avails to the credit of the defendant bank and so notified it, but that it equally would have done had the transaction been as defendant says it was, a discount which it, or Parrish, procured for the maker of the notes and in which it had no direct pecuniary interest.

For reasons to be presently stated, this is a case in which the burden of proof rests upon the plaintiffs with more than ordinary weight. If the defendant bank took for itself the money paid by the plaintiff bank on the notes, the means of proving the fact were in plaintiffs' hands and they did not choose to use them. At their demand, the books of the defendant bank were produced in court and thrown open for their inspection. They contented themselves with proving that when the defendant bank sent the notes to the plaintiff bank, it charged their face less discount to the latter, something which, so far as we can see, shows nothing material as to any direct pecuniary interest the defendant bank had in the transaction. If the money in any real sense came into the beneficial possession of the defendant, its books would have established that fact beyond question. It must be remembered that so far as the testimony goes, there is no reason whatever to suppose that the maker of these notes was al-

ready indebted to the defendant bank. When Wylie had his conversation with Parrish, the transactions between maker and the defendant bank were still in the future. Up to that time, the Tazewell Timber Corporation had apparently not yet opened an account with the defendant bank. Its doing so was dependent upon the latter's being able to secure for it a $50,000 line of credit. Whether that could or could not be accomplished in its turn was contingent upon the defendant bank being successful in its efforts to make arrangements with the plaintiff and others such as were proposed to the plaintiff bank. Of course, if at the time the defendant bank offered the notes to the plaintiff bank they were the property of the former, their proceeds did go to its use, and even if they had not, defendant might well be liable on the guaranty by which it brought about their sale. What is the evidence on this point? Again, plaintiffs failed to use that which was open to them and which if the fact were as they are forced to claim it was, would have revealed it beyond the possibility of doubt or peradventure, for the books and records of defendant bank would necessarily have shown it. Whatever the facts were, they must in all human probability have been writ large on the correspondence passing between the defendant bank and the maker of the notes and in all probability were known to those who acted for the borrower. No attempt to procure this testimony was made, nor is any explanation of the failure to do so suggested. All that is put in on this point were some letters which passed between the two banks. They were obviously all written without any attempt to use words with legal precision. They are statements contained in those written on behalf of defendant bank which, if they stood alone, as they do not, might raise an inference that the notes had once been its property, while there are others to be found in the communications from the plaintiff bank which quite as clearly seem to negative any possibility that the plaintiff bank thought, the defendant bank was in any wise liable to it. It is not shown that when any of the notes fell due, and before their renewal, the plaintiff bank ever charged them to defendant. When the plaintiffs closed their testimony without offering anything more, the learned judge below was right in telling the jury to return a verdict for the defendants.

Let us see how the matter then stood. The plaintiff bank had told the court that it had deliberately refrained from asking for an indorsement of the notes because it knew that the defendant bank by making such indorsement would break the law and provide the means by which it could have been caught in the breach. According to the plaintiff bank's own story, it had contented itself with taking a verbal guaranty which would equally violate the statute; the only difference being that it would not be so easily possible for the bank examiners to find it out. There are no penalties attached to a breach of this statute, and a loan made in violation of it does not thereby become uncollectible, and it may be that even the deliberate participation of the two banks in a scheme to deceive the bank examiners will not justify a refusal to enforce the agreement between them. It has been so held by courts of high authority. Hanover National Bank v. First National Bank, 109 F. 421, 48 C. C. A. 482; Kendrick State Bank v. First National Bank, 213 F. 10, 130 C. C. A. 202. It is true that in the former case there was a strong dissent by Judge Caldwell, and there is much of appeal in what Judge Dietrich has recently said in the case of Live Stock Bank v. First National Bank (D. C.) 300 F. 945. There is no occasion as we see it for us to pass upon that question. Whatever may be ultimately held as to it, there is no doubt the statute is a salutary one. If it were lived up to in letter and in spirit, bank failures would be far rarer than they are.

We think it clear that one who does what plaintiff bank says it did must offer convincing proof of two things: First, that the other party really intended to give a guaranty which would violate the law; and, second, if he did, and actually gave it, of the existence of some one of the conditions upon which the right to recover upon such a guaranty depends. We have already commented upon the failure of the plaintiffs to offer satisfactory evidence, either that the defendant bank ever owned the notes, or that their proceeds went to its use. All this was upon the assumption that Parrish had the authority from the defendant bank to enter into the arrangement which plaintiffs say he did and that he in fact did so. Wylie swears that all that Parrish said was that "whenever the board of directors of the Farmers' & Miners' Bank wanted the notes paid, he would have them taken up," and he is not willing to testify that Parrish did not add that, in that event, he would place them in some other bank. Wylie does not say that Parrish said the defendant bank would do anything. Now Wylie may have been right in supposing that Parrish identified the bank with himself as

Louis XIV did the state, but that is something which we cannot assume in the absence of proof of which there is none. Moreover, Wylie in one part of his testimony says that when the matter was fresh in his mind, he told his discount committee and his directors that he had discounted the notes at the request of Parrish for the Tazewell Timber Corporation. If that is a correct version of what he did, of course, the plaintiffs have no case against the bank. If Parrish personally assumed any obligation, it was to answer for the debt or default of another, and as it was not in writing, it is unenforceable against him.

Affirmed.