Illinois Bond & Investment Company, Appellant, v. H. F. Gardner et al., Appellees.

Opinion filed June 1, 1928.

HOLT & HOLT, for appellant.

W. W. HART and LAYMAN & JOHNSON, for appellees; PULVERMAN & CANTRELL, of counsel.

MR. JUSTICE WOLFE delivered the opinion of the court.

This is an action in replevin brought in the circuit court of Franklin county, at the June term, A. D. 1927, by the appellant, the Illinois Bond & Investment Company, against the appellees, H. F. Gardner, the Summers Motor Company and James S. Pritchard, sheriff of Franklin county, to recover the possession of a Nash automobile described in the affidavit, writ and declaration.

The declaration is the usual form in such cases. To which declaration, the appellees filed three pleas, viz: *Non cepit, non detinet,* and a special plea that Pritchard, the sheriff, held the said car under a legal execution. To these pleas the appellant filed separate replications and issue was joined.

The Illinois Bond & Investment Company is a corporation organized under the laws of the State of Illinois, doing business in Salem, Illinois. The Southwest Nash Company is a distributor of Nash automobiles in St. Louis, Missouri.

The Summers Motor Company of Benton, Illinois, in May, 1927, applied to the Southwest Nash Company to purchase the Nash automobile in question. The Summers Motor Company being unable to pay the entire purchase price in cash, the Southwest Nash Company made a bill of sale of said automobile in favor of the appellant, the Illinois Bond & Investment Company, whereby they sold and transferred to the appellant the Nash automobile in question. They also caused a certain trade acceptance to be issued in favor of the Illinois Bond & Investment Company, signed by the Southwest Nash Company, drawer and distributor, and by the Summers Motor Company, as drawee; and

also at the same time an application for renewal of the trade acceptance of said automobile was signed by the Summers Company; they also caused a trust receipt to be executed by the appellee, the Summers Motor Company, in and by which it acknowledged the receipt of the automobile in question from the Southwest Nash Company of St. Louis, Missouri, acting for the appellant, the Illinois Bond & Investment Company, according to the terms and conditions of said trust receipt, and attached to said bill of sale, trade acceptance and trust receipt, its draft on the National Bank of Commerce, of St. Louis, for the sum of $1,162.93 to the Illinois Bond & Investment Company, and signed by the Southwest Nash Company.

The same was sent through the National Bank of Commerce in St. Louis to the Salem National Bank of Salem, Illinois, where the said bill of sale, trade acceptance and trust receipt were taken up by the appellant, the Illinois Bond & Investment Company, upon payment of said draft.

In and by the said trust receipt it was provided that the Summers Motor Company agreed to hold the said automobile in trust as the property of the appellant, the Illinois Bond & Investment Company, and to return the same on demand; that the said Summers Motor Company would not rent, lease, mortgage, pledge, incumber, use or demonstrate the same, but would drive it directly to its place of business and hold the same until paid for.

It was also provided in said trust receipt that the Summers Motor Company, upon the written order or release of the appellant, the Illinois Bond & Investment Company, might sell said automobile, but said sale should not be made except on the written order or release by the appellant, and then only for cash, and for no less than the sum mentioned in the written order or release previously obtained from the appellant.

The Summers Motor Company upon receipt of the said Nash automobile drove it directly to its place of business on North Main street in the city of Benton, Illinois, and there stored and displayed the same. While the said automobile was being so stored and displayed by the said Summers Motor Company, and without the knowledge of the appellant and without any written order or release as specified in the trust receipt from appellant, Eagle Summers, representing the Summers Motor Company, sold and delivered said Nash automobile to appellee H. F. Gardner, who paid the said Summers Motor Company for the same.

The agent of the appellant soon after this found the car had been removed without the knowledge of the appellant. Upon inquiry he learned that it was in the possession of the appellee H. F. Gardner, and immediately the agent of the appellant made demand upon the appellee H. F. Gardner to surrender the automobile to the appellant as owner of the same. Gardner refused to surrender the automobile to the appellant, who took steps to replevin the car. In the meantime, appellee James S. Pritchard, sheriff of Franklin county, having a legal execution on a judgment, levied upon said automobile in the possession of H. F. Gardner and took the same into his possession. Thereupon the appellant instituted a replevin suit against all of the defendants to recover said automobile.

On the trial of said cause appellant introduced in evidence, before the jury, appellant's bill of sale, trade acceptance, etc., claiming the title and right of possession to the said automobile, and also gave evidence of the demand made upon the appellee H. F. Gardner and James S. Pritchard, sheriff of Franklin County, to surrender possession of the car to the appellant; also the facts of the storage of the automobile in the Summers Motor Company's place of business in the city of Benton and the taking of the same from the salesroom and delivery thereof to the appellee H. F.

Gardner, without the knowledge or consent of the appellant.

The appellee H. F. Gardner testified on behalf of the appellees as to the purchasing of the automobile and paying the Summers Motor Company for same, as above stated; that the car was in the Summers Motor Company's sale and storage room where this car and a number of other cars were stored and displayed. C. B. Dollins testified that Eagle Summers of the Summers Motor Company was engaged in the sale of the Nash automobiles and the location of the place of business of the Summers Motor Company; that it had a storage and salesroom and there were a number of cars in said room. The record of the judgment of H. J. Renner against Eagle Summers and the execution issued upon the same in the hands of the appellee Pritchard, the sheriff, upon which the levy had been made, was also introduced in evidence. This was substantially the evidence offered in the case and there was very little dispute in regard to the facts as disclosed by this evidence.

At the conclusion of all the evidence the court, on motion of the appellee, excluded the evidence from the jury and gave a peremptory instruction to the jury to find the appellant not guilty, which the jury did. The court entered judgment upon the verdict in favor of the appellees and against the appellant, ordering and directing that said automobile be returned to the appellees and also entered judgment against the appellant in favor of the appellees for the costs of the suit. Exception, appeal, etc.

It is the contention of the appellant that by virtue of the bill of sale executed to it by the Southwest Nash Company of St. Louis, Missouri, said company transferred the title of said automobile to the appellant, and through the making of the trade acceptance, and trust receipt, that the title and ownership of said automobile fused in the appellant, and also that the

delivery or sale of said automobile by the Summers Motor Company to the appellee Gardner was null and void so far as the appellant was concerned, for the reason that the Summer Motor Company could not sell or convey any better title than it had, and it had neither the title nor the right of possession to said automobile, and hence could not legally sell or dispose of the same; also, that the judgment on which execution was issued in the hands of appellee Pritchard was obtained by H. J. Renner against Eagle Summers, who, at the time the judgment was rendered and execution issued in the hands of the sheriff, did not own the automobile, or have any right, title or interest in same. Also, that the levying of said execution was illegal so far as the rights of the appellant were concerned; that upon failure of the appellees Gardner and Pritchard to deliver said automobile upon demand, the plaintiff, upon notice, etc., showing demand for possession, became entitled to the recovery of said Nash automobile.

The appellees contend that by reason of the fact that the Summers Motor Company was permitted to store and display said car in their storage and salesroom where they stored other cars for sale, and later, by reason of the Summers Motor Company having sold and delivered the said car to H. F. Gardner, that the appellant is estopped from saying that the Summers Motor Company had no authority to sell said car under section 23 of the Uniform Sales Act, Cahill's St. ch. 121a, ¶ 26.

The appellees contend that they were not guilty of any act or representation that should work an estoppel in this case in favor of the appellees or any other person. That if the question of estoppel was involved it was a question of fact whether or not the appellant had, by any act, word or representation, done anything that would amount to an estoppel, which was a question of fact for the jury to determine, and not a

legal question for the court, upon a motion to exclude the evidence and give a peremptory instruction to the jury.

Section 23 of the Uniform Sales Act, Cahill's St. ch. 121a, ¶ 26, is as follows: "Subject to the provisions of this Act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is *by his conduct precluded from denying the seller's authority to sell.*"

The automobile in question was delivered to the Summers Motor Company on terms and conditions as set forth in the trust receipt; the said Summers Motor Company had for some years prior to the sale in question operated its garage in the city of Benton, Illinois, and was the distributor of Nash automobiles similar to the one involved in this case, the said automobiles being kept on display in the sales and storage room of the garage of said Summers Motor Company, all of which was so known to the appellant.

"Where the true owner of property allows another to appear as the owner of, or to have full power of disposition over the property, so that an innocent third party is led into dealing with the apparent owner, an estoppel may operate against the true owner which will preclude him from disputing the existence of a title which he has caused or allowed to appear to be vested in another." * * * Without regard to the terms of contract of sale, an innocent purchaser will be protected where the appearance of ownership is in one while the title is really in another, and if the vendor delivers the chattel to the vendee before payment of the purchase price and allows the vendee to have all the indicia of ownership, retaining a secret lien for payment, he cannot assert his right against a judgment creditor of the vendee without notice before

a levy is made." (*Drain v. LaGrange State Bank*, 303 Ill. 330.)

The appellant contends that they are not estopped from claiming ownership of this car as against the appellees, for the reason that the Summers Motor Company did not have title to the automobile and therefore could not give a purchaser any better title than they then had, and relies upon *Sherer-Gillett Co. v. Long*, 318 Ill. 432, to support its contention.

An examination of that case shows that the facts are not similar to the case at bar. In the *Gillett* case one Taylor entered into a contract of a conditional sale with Sherer-Gillett Company for a display counter to be used by Taylor in his grocery store, for which Taylor agreed to pay $10 in cash, and monthly payments until the purchase price was fully paid, the title to remain in Sherer-Gillett until full payment of the purchase price had been made. Two days later Taylor sold the counter to Long. Long then had no notice of the reservation of the title under the contract and conditional sale, and no notice of any right of appellee. In the Sherer-Gillett case Taylor was not engaged in the business of selling display counters and show cases, but was in the business of selling groceries.

In the case at bar the Summers Motor Company was engaged in the business of selling the kind of automobiles that the appellant was handling. He took the automobile to his regular place of business and placed it in the display, sales and storage room where other cars were displayed and stored. A purchaser desiring to buy the automobile would be led to believe that the Summers Motor Company, which had possession of the car on display in their salesroom (without any notice of any secret agreement between Summers Motor Company and anyone else) was the owner of and had a right to sell the said automobile.

A customer going into a retail store and seeing goods on display offered to the public generally for sale, buying such goods, in good faith, should be pro-

tected against the holder or owner of any secret lien of which the purchaser has no notice. To hold otherwise would seriously interrupt business. Purchasers would hesitate before buying for fear the seller could not give good title to the goods he has for sale, because of some one having a secret lien through some trade acceptance of bill of sale for said goods.

We believe the legislature in passing this statute, Cahill's St. ch. 121a, ¶ 26, meant to protect the owner whose goods were sold without his authority or consent, but for the protection of innocent purchasers, having no reason to suspect secret liens, etc., has very wisely added, "unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."

We are of the opinion that the appellant has precluded itself from denying the seller's right or authority to sell the automobile in question.

The appellant contends that it was a question of fact that should have been submitted to the jury, whether there had been an estoppel in this case, and that it was error for the court to direct a verdict in favor of the defendants. Ordinarily this is the correct rule, but where the facts are not in dispute, and only one conclusion can be reached from the facts in evidence, then it becomes a question of law for the court to say whether or not, under the facts as presented, the appellant in this case has been estopped from asserting its rights as claimed by their secret lien, under the Uniform Sales Act, Cahill's St. ch. 121a, ¶ 26, as against an innocent third party. "Where there is no dispute about the facts and only one inference can be drawn, it is a question of law whether or not the facts proved constitute an estoppel." (21 Corpus Juris, page 1253.)

We are of the opinion that there is no reversible error in this case and the decree of the circuit court of Franklin county is hereby affirmed.

*Affirmed.*