National Bond & Investment Company, Appellee, v. Wallace E. Shirra et al., Trustees under a Common-Law Trust, Trading as John Powers Company, Appellants.

Gen. No. 33,749.

Opinion filed January 6, 1930.

HUTSON & TRAEGER, for appellants; JOHN D. BOLGER, of counsel.

JOHN W. CREEKMUR and D. E. HOOPINGARNER, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought an action in trover to recover the value of a Peerless sedan which the defendants refused to deliver upon a writ of replevin. Upon a trial the court directed a jury to bring in a verdict for plaintiff for $1,825, and from the judgment thereon defendants appeal.

Defendants, who are trustees operating the John Powers Company, a common-law trust, about October 10, 1926, bought the car in question from the Peerless Motor Car Company and placed it in the salesroom of the Advance Motor Sales Company, also a common-law trust. Defendants say they had an understanding with the Advance Company that the Peerless cars placed in its salesroom were for display purposes only and were not to be offered for sale. October 12,

1926, a conditional sales contract was executed between the parties, stating that the Powers Company had sold the car to the Advance Company for $1,510.13, and a note for this amount was executed by the Advance Company, payable on demand, which note and contract were delivered to and held by the Powers Company, the defendants. The contract contained the usual provisions that title should be retained by the seller, the defendants, until the car was entirely paid for, with the right of repossession in the seller in case of default.

Ben Baldon was the secretary and treasurer of the Advance Company and apparently owned all its stock, although there is some suggestion that another man and possibly Baldon's wife were interested. October 22, 1926, the Advance Company executed a conditional sales contract selling the car to Ben Baldon for $2,245.88. The contract recited that $695 was paid in cash and the balance of $1,550.88 by Baldon's note, payable in monthly instalments. This conditional sales contract was executed by ''Advance Motor Sales Company by Ben Baldon, Sec. and Treas.'' as seller, and by ''Ben Baldon'' as purchaser. On the same day this sales contract and note were assigned by the Advance Company by ''Ben Baldon, Sec. and Treas.'' to the plaintiff, National Bond and Investment Company, which paid $1,380 for the same by draft payable to the Advance Motor Sales Company. Plaintiff is a finance company purchasing from retail dealers notes and contracts evidencing sales of automobiles. Later an investigator was sent on behalf of plaintiff to check the motor number of the car and found it at the place of business of the Advance Motor Sales Company in Chicago. The car remained in the possession of the Advance Company until November 10, 1926, when Baldon disappeared and thereupon defendants took possession of the car, claiming under their conditional

sales contract with the Advance Company, and sold it. Subsequently plaintiff brought suit in replevin, demanding the automobile from defendants, which they refused to deliver, and this action in trover followed.

Peerless cars sold were delivered to purchasers not from the showroom of the Advance Company but from the Peerless Company's warehouse. The car in question remained on the floor of the salesroom of the Advance Motor Sales Company until taken away by the defendants. The Advance Company was engaged in the business of selling automobiles and had cars other than Peerless on the floor of its salesroom.

The question is whether the defendants were entitled to the car under their conditional sales contract with the Advance Company dated October 12, 1926, or whether the plaintiff was entitled to the car under the conditional sales contract between Ben Baldon and the Advance Motor Sales Company dated October 22, 1926, and assigned to plaintiff.

Defendants in their brief claim a better title to the car because their conditional sales contract was prior in point of time to that held by plaintiff. This point is without merit. Such contracts were not recorded and the contract held by defendants was in the nature of a secret lien, of which plaintiff had no notice.

The question must be determined under the provisions of the Uniform Sales act, which provides in section 23, Cahill's St. ch. 121a, ¶ 26, cl. 1:

"Subject to the provisions of this Act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."

The Advance Motor Sales Company was in the business of selling automobiles. Possession of the car in question was given by the defendants to the Ad-

vance Company, either for the purpose of selling it or as a sample car. The fact that it was subject to a conditional sales contract retaining title in the defendants and also to the understanding that it was not to be sold but used only as a sample, so far as the record shows, was not known to plaintiff nor to anyone except the parties to this understanding. Defendants knew that the Advance Motor Sales Company was selling automobiles at retail.

As a general rule, where the true owner of the property allows another to appear as the owner of or to have full power to dispose of the property, so that a third party is led into dealing with the apparent owner, an estoppel may operate against the true owner which would preclude him from disputing the existence of a title which he has caused or allowed to appear vested in another. *Drain v. LaGrange. State Bank,* 303 Ill. 330. The facts under consideration in *Illinois Bond & Investment Co v. Gardner,* 249 Ill. App. 337, are very similar to those in the instant case. There, a company engaged in the business of selling automobiles took an automobile, with permission of the plaintiff, to its regular place of business and placed it in the display room. It was bought by a purchaser and the plaintiff claimed title under a trust agreement. In its opinion the court said: ''A customer going into a retail store and seeing goods on display offered to the public generally for sale, buying such goods, in good faith, should be protected against the holder or owner of any secret lien of which the purchaser has no notice. To hold otherwise would seriously interrupt business. Purchasers would hesitate before buying for fear the seller could not give good title to the goods he has for sale, because of some one having a secret lien through some trade acceptance of bill of sale for said goods.''

Another case in point is *Commercial Credit Co. v. Hardin,* 175 Ark. 811, where the court said: ''The fact that Hardin (the original owner) placed the Star coup-

ster in the possession of the Mack Company for sale, even though with a limitation upon the price and terms of sale, puts him in no better position as regards the disposition thereof than the holder of a void chattel mortgage.''

In *Kearby v. Western States Securities Co.*, 31 Ariz. 104, the court quoted from *Gump Inv. Co. v. Jackson,* 142 Va. 190, as follows: ''One conclusion is that some duty, at least, rests upon an individual, corporate or otherwise, who finances a retail dealer, to see to it that cars upon which he has a lien are not left under the domain and control of such dealer on his salesroom floor, to be offered to the public. The business of the Gump Investment Company was to finance retail automobile dealers, and it did finance them for a profit. It assumed some risk both as to the moral and financial standing of every dealer it financed. It took a risk as to the hazard for a profit. This is the status of the Gump Investment Company in this case.''

In *Sherer-Gillett Co. v. Long,* 318 Ill. 432, cited by defendants, Taylor, who ran a grocery store, sold a counter to Long two days after Sherer-Gillett Company had delivered it to Taylor under a conditional sales contract. In that case Taylor was not engaged in the business of selling counters, but was engaged in the business of selling groceries.

We hold that, by the defendants' conduct in delivering possession of the car to the Advance Motor Sales Company, they are estopped from asserting any secret lien or agreement against the plaintiff.

Defendants say they did nothing that misled the plaintiff, for it did not know that the car was in the display room of the Advance Company at the time of its transaction with Baldon. The sales contract from the Advance Company to Baldon recites that the ''execution of said note shall be conclusive proof of the delivery of said automobile to said purchaser.'' Plain-

tiff dealt with Baldon as purchaser who had both possession and apparent title to the car and it was not concerned with what he did with it so long as he did not violate the sales contract.

It is contended that there was no bona fide sale from the Advance Motor Sales Company to Baldon; therefore, the conditional sales contract which was assigned to plaintiff is void. If the Advance Motor Sales Company, of which Baldon owned all or nearly all of the stock, undertook to sell the car to Baldon individually, such transaction was not necessarily void. Certainly, as far as the plaintiff knew to the contrary, as far as the evidence shows, it was a valid sale. The note signed by Baldon was a valid promissory note, as was the sales conditional contract. The validity of a similar contract and note has already been upheld in this court. *National Bond & Investment Co. v. Lanners,* 253 Ill. App. 262.

It is argued that plaintiff by inquiry could have ascertained the existence of defendants' lien. Defendants were strangers to plaintiff in the transaction. Inquiry of Baldon would probably not have produced any information as to any other claim, for Baldon represented himself to plaintiff as a bona fide purchaser from the Advance Motor Sales Company. In any event, there is no evidence that Baldon would have informed plaintiff of defendant's title and the conclusive inference from his conduct is that he would not have done so.

It is claimed that the judgment of $1,825 is excessive. The contract and note held by plaintiff entitled it either to the payment of $1,550.88 or the possession of the car, and when defendants made it impossible for plaintiff to take possession of the car, its damages must be measured by the principal amount unpaid on the Baldon note and contract on November 10, 1926, the date defendants took possession of the car, together

with interest from said date, provided said amount be not more than the value of the car on said date. A witness testified that the market value of the car at this time was $2,000. No contrary evidence was intro-. duced. The amount of the judgment is made up of the principal and interest at the rate provided for in the note and is less than the value of the car.

For the reasons indicated the judgment is affirmed..

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.