Ford Motor Company, Appellee, v. National Bond and Investment Company, Appellant.

Gen. No. 39,833.

586

Opinion filed April 11, 1938.   Rehearing denied April 25, 1938.

JOHN W. CREEKMUR, NOLAN H. TEPPER, MILTON SIL-
BERG and LEONARD M. COHEN, all of Chicago, for appel-
lant.

SHANNON, MORRILL & JOHNSON, of Chicago, for ap-
pellee; CARL M. JOHNSON, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the
court.

In an action by Ford against the investment com-
pany for the conversion of nine automobiles and upon
trial by the court there was a finding for plaintiff with
judgment.   There is practically no dispute as to the
facts.   The automobiles were delivered to Cooper
Motor Sales, Inc., a dealer in Chicago with its prin-
cipal place of business at 5230 Milwaukee avenue,
under the terms of a sales agreement in writing made
between Ford and Cooper on January 18, 1935.   Pur-
suant to this agreement, plaintiff, on January 6, 7 and
8, 1936, through a transport company of Chicago, de-
livered these automobiles to Cooper.   Cooper gave to
the transport company checks to the amount of the
purchase price and the transport company delivered
these checks to the plaintiff's cashier.   The checks were
drawn on the National Security Bank of Chicago and
were payable to plaintiff; were deposited by plaintiff
in the Drovers National Bank at Chicago for collection
and returned by that bank "N. S. F."   On January 11,
1936, before the checks were returned, the defendant

investment company claiming under trust receipts issued to it by Cooper took these automobiles from the possession of Cooper Motor Sales, Inc. Plaintiff has not been paid for the automobiles. Plaintiff demanded possession from defendant and upon its refusal brought this suit and obtained judgment for the value of the automobiles, $4,660.68.

The question for decision is whether under the terms of the contract of January 18, 1935, between Ford and Cooper, plaintiff has title and right to possession of the automobiles or whether the investment company, by virtue of the trust receipts issued to it as "entruster" by Cooper "trustee" pursuant to the Uniform Trust Receipts Act (Ill. Rev. Stat. 1937, ch. 121½, pp. 2840–44; Smith-Hurd Ill. Anno. Stats., ch. 121½, §§ 166–187 [Jones Ill. Stats. Ann. 135.17(1)–135.17(22)]) and by taking possession thereunder has the title and right to possession. The contract of January 18, 1935, between Ford and Cooper is a quite lengthy printed document consisting of 11 paragraphs in 133 lines. The agreement recites it was made at Dearborn in the State of Michigan between Ford Motor Company, a Delaware corporation with its principal place of business at Dearborn, Michigan, and Cooper Motor Sales, Inc., a corporation of the State of Illinois, therein described as the "dealer." The Ford Motor Company is described as the "company." Paragraph 1 provides:

"Company agrees to sell and Dealer agrees to purchase, *for resale* for use within the boundaries of the United States of America, Ford automobiles, trucks, . . . *upon the terms, conditions and provisions hereinafter specifically* set forth and subject to the right reserved by Company to sell to other Dealers and direct to retail purchasers in any part of the United States without obligation for any commission to Dealer on any such sale." Paragraph 2 provides:

"Company will sell its products to Dealer f. o. b. Detroit, Michigan, at such net list price, or at such dis-

counts from published list prices as are from time to time fixed by the Company. *Payment by Dealer is to be in cash before delivery, or by paying sight draft attached to bill of lading, including exchange.* Receipt from Dealer or Dealer's bank of any check, draft or other paper shall not be held to constitute payment, and if Company is unable to obtain U. S. currency on any such check, draft or other paper for any reason whatever within 30 days after receipt of same, Dealer shall reimburse Company, upon request, in full, including any expenses sustained by Company in endeavoring to realize on such paper." Paragraph 6 provides:

"*Title to all Company products until actually paid for by* Dealer shall be and remain in Company; but regardless of title remaining in Company or having passed to Dealer all shipments shall be at Dealer's risk from the time of delivery to carrier at place of shipment."

The trust receipts under which defendant claims were issued by the dealer Cooper under an arrangement whereby defendant financed or "floor-planned" Cooper's purchase. The evidence shows that plaintiff knew that defendant was financing these purchases. The evidence also shows that defendant knew or might easily have known of the terms of the contract between plaintiff and the dealer Cooper with reference to the title remaining in plaintiff until actual payment was made. The trust receipts under which defendant claims were made pursuant to a statement of trust receipt financing executed by the dealer Cooper as trustee and by the defendant as entruster, and filed with the Secretary of State of Illinois on August 8, 1935, as required by the uniform trust receipts statute, Ill. Rev. Stat. 1937, ch. 121½, ¶¶ 166–187, pp. 2840–44 [Jones Ill. Stats. Ann. 135.17(1)–135.17(22)].

It is contended by the defendant in the first place that under the terms of the agreement of January 18, 1935, the sales made by plaintiff to Cooper were sales on

credit which vested title in the dealer and not, as plaintiff contends, a conditional sales agreement by which title was retained in plaintiff. Defendant says (as against it) plaintiff therefore had neither title nor right to possession on the date of the alleged conversion. Defendant argues this is true because of the language of the agreement. It points out that the first paragraph of the agreement specifically states that the goods are delivered ''for resale.'' So also it is said the second paragraph provides that if Ford, the vendor, is unable to obtain United States currency on the check, draft or other paper given by the dealer vendee within 30 days after receipt of same the dealer will reimburse the Ford Company upon request. These provisions, say defendant, are inconsistent with any construction of the contract holding a sale thereunder to be conditional and inconsistent with an intention that the title to the goods sold should remain in the vendor.

We do not so construe the agreement. The provision that the goods are transferred ''for resale'' fairly construed in the light of other provisions of the agreement we think must be held to refer to a resale which is to be made after and not before the vendee shall have paid for the goods ordered by him. The provision that the vendee should within 30 days reimburse the vendor for any check, etc., on which plaintiff is unable to realize cash does not, fairly construed, mean that plaintiff promises to give the dealer an extension of credit for that period of time but only that the plaintiff might hold the paper for 30 days if he elects so to do. We do not construe it to be an agreement on the part of the seller to give credit to the dealer in view of the provisions which clearly express the intention of the parties that the dealer vendee is to pay cash or its equivalent on or before delivery, and that payment and delivery are to be concurrent.

Defendant argues that the conduct of the parties in this particular transaction was such as to indicate that

an absolute sale was intended. It is said this must be inferred from the fact that Cooper was permitted to pay by check instead of cash or by draft drawn as specifically provided in the agreement. It is further urged that this must be inferred from the fact that plaintiff, as defendant says, permitted the automobiles to be placed in Cooper's showrooms for the purpose of selling them. We think these inferences are not justified. The checks were mere credit instruments used for the purpose of transferring cash from the dealer to the seller. There is no evidence tending to show that plaintiff affirmatively assented to the placing of these automobiles in the showroom of the dealer prior to the payment therefor. Defendant also points out that plaintiff, by its agreement, did not reserve to the plaintiff the right to repossess itself of the automobiles in case of nonpayment. Such express reservation was not necessary. The right to repossess at the option of plaintiff followed immediately upon the dishonor of the checks.

The defendant, for the purpose of showing acts of the plaintiff inconsistent with the reservation of the title, introduced in evidence the books of account of the plaintiff. These show that when a car ordered by a dealer was ready for delivery an invoice was made and posted to a summary sheet termed the "Draft Register." This sheet showed the name of the dealer, the amount of the invoice, a date stamp opposite each invoice number and a distribution of the invoice price to various accounts. When a dealer's check in payment for a car was received by plaintiff from the transport company the date was stamped on the sheet opposite the dealer's name and invoice number. This stamping was called "dead-checking," and the "dead-checking" indicated that plaintiff had received some form of payment for the automobile. The books of plaintiff also showed that plaintiff kept a ledger account in the name

of the dealer, which account showed sales of automobile parts on credit and debits for "N. S. F." checks given by the dealer in payment for automobiles. These books showed that when informed by its bank that Cooper's checks had been returned marked "N. S. F." the plaintiff debited the amount of these checks against Cooper's account. In making entries on account, a balance was struck after each debit and credit entry, etc. The defendant contends that the fact that these books of account were kept in this way shows clearly that the sales made by plaintiff to the dealer were sales on credit. The evidence shows that there was an arrangement between Cooper and plaintiff entirely independent of the written agreement (covering parts only) whereby a monthly credit of $500 was extended payable on the 10th of each month, but at no time was there any extension of credit to the dealer on account of automobiles purchased by him. The method of bookkeeping by which the account was kept was not important or determinative. The relationship between the parties was determined so far as the automobiles were concerned by the written contract which we have held showed the intention of the manufacturer and the dealer that payment should be either concurrent with or precede delivery, and that until such payment was made in full the title should remain with plaintiff.

The effect of all these provisions of the contract, defendant says, was that plaintiff attempted to place itself in a dominant position so that it could elect between an absolute sale vesting title in the dealer and a conditional sale reserving title in itself, as defendant says, attempting to "straddle the fence." It is urged that the courts have held that legal effect will not be given to a clause reserving title where other provisions of the instrument evince an intention to make an absolute sale. Defendant cites *In re Harrington*, 212 Fed. 542; *Flanders Motor Co. v. Reed*, 220 Fed. 642; *In re King*

*Motor Co.,* 31 Am. Bankr. Rep. 172; *Frick Co., Inc. v. Cox,* 101 Ind. App. 402, 199 N. E. 462; *Martin v. Michigan Trust Co.,* 23 F. (2d) 609 (6 C. C. A. 1928); *Scott County Milling Co. v. Grayson,* 88 F. (2d) 190 (5 C. C. A. 1937) and *Riedlinger v. Mack Machine Co., Inc.,* 117 N. J. Eq. 334, 175 Atl. 790. Defendant does not cite any decision of any Illinois court, and the cases cited are, we hold, clearly distinguishable on the facts from this case in that in each instance the property sold was delivered under a contract by which the payment to be made to the vendor was to be deferred until after the resale of the property. Here it appears the intention was that delivery and payment should be concurrent. In other words, in the cases cited the property was delivered on credit under an open account, while here the contract indicates the intention of the parties that payment should precede or be concurrent with delivery, and that until such payment was made the title to the property was not to pass to the vendee.

While the law of this State was at one time otherwise, section 20 of the Uniform Sales Act, enacted in 1915 (Ill. Rev. Stat. 1937, ch. 121½ [Jones Ill. Stats. Ann. 121.24]) expressly legalizes such a contract. It provides:

"Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may by the terms of the contract or appropriation, reserve the right of possession of property in the goods until certain conditions have been fulfilled. *The right of possession or property* may be thus reserved notwithstanding the delivery of the goods to the buyer."

In *Horwitz v. Leibowitz,* 274 Ill. App. 196, this court said: "It seems to be settled by the weight of authority that 'where by the written contract of the parties it is expressly provided that the title to the property shall remain in the vendor until the purchase price is fully

paid, and there is no reservation of a lien, the transaction is a conditional sale, and not a mortgage.' (6 Am. & Eng. Ency. of Law, — 2d Ed. — p. 446.)''

Many other cases decided in this and the Supreme Court of the State are to the same effect. (*Sears Roebuck & Co. v. Piasa Bldg. & Loan Ass'n,* 276 Ill. App. 389; *Leopold v. Universal Credit Co.,* 290 Ill. App. 305; *Conner v. Borland-Grannis Co.,* 294 Ill. 58; *Sherer-Gillett Co. v. Long,* 318 Ill. 432; *National Bank of Republic v. Wells-Jackson Corp.,* 358 Ill. 356.) These cases show that (whatever the law of this State may have been in the past) it is now the rule that generally speaking a vendor can not convey a better title than he has. Defendant also argues that plaintiff was estopped because the checks given by Cooper were not presented in a reasonable time. There is no proof, as a matter of fact, that the checks were not presented within a reasonable time. Hence, that defense cannot prevail.

Again, however, defendant contends that the Sales Agreement between Ford and Cooper specifically provides that it is a Michigan agreement and shall be construed according to the laws of the State of Michigan. Defendant says (citing a number of cases) that under the Michigan law this sales agreement is held to be a chattel mortgage. Defendant argues that being a chattel mortgage it is unenforceable against defendant because it is not recorded either in Michigan or Illinois. By statute this court takes judicial notice of ''all laws of a public nature enacted by any State or territory of the United States. (Ill. Rev. Stat. 1937, ch. 51, ¶ 48A, p. 1633 [Jones Ill. Stats. Ann. 107.122]; *Christensen v. Blinstrup,* 284 Ill. App. 163; *In re Estate of DuMont,* 293 Ill. App. 406.) We take judicial notice of the statutes of Michigan. Defendant concedes that under the Michigan law it was not necessary to record this sales agreement. The argument of defendant seems to be that since by Michigan law the agreement was a chattel

mortgage, and since by the Illinois law an instrument declared by Illinois law to be a chattel mortgage must be recorded, therefore it was necessary to record this Michigan agreement in Illinois. We cannot accede to this view. Whether a conditional sales contract is effective to enable the vendor to retain title is determined by the law of the State where the chattel is at the time of the sale (Restatement, Conflict of Laws, sec. 272) and if by the terms of the agreement for a conditional sale the chattel is to be delivered by the vendor to the vendee in another State before the transaction is complete the law of the State where the transaction is completed by delivery to the vendee and not that of the State where the transaction was initiated by the contract determines whether or not the vendor retains title to the chattel. These are the general rules. (See Restatement, Conflict of Laws, § 272, ¶¶ A, B, and C.) In this case the contract specifically provides that the law of Michigan shall be applicable. Under Michigan law, although the instrument is held to be a chattel mortgage, recording is not necessary. On the other hand, if we regard the law of Illinois as applicable the agreement is one for a conditional sale which by the law of Illinois need not be recorded. Therefore, whether we regard the law of Michigan or of Illinois as applicable, and whether we regard the agreement as a chattel mortgage in Michigan or a conditional sales agreement in Illinois, it was unnecessary that the agreement be recorded. There is no statute in Illinois requiring an instrument to be recorded in this State solely because under Michigan law it would be denominated a chattel mortgage. The character of the instrument rather than the name given it would seem to be determinative. The question as to what instruments are required by the law of Illinois to be filed for record is a matter determined by the public policy of

Illinois as expressed in its statutes. We hold it was unnecessary to record this agreement either in Michigan or in Illinois.

The general rule in Illinois is that the dealer cannot convey to a buyer a better title than it possessed. (*Drain v. LaGrange State Bank,* 303 Ill. 330; *Sherer-Gillett Co. v. Long,* 318 Ill. 432.) While the specific question has not been decided by the courts of this State hitherto, we hold this rule has not been changed by the enactment of the later Trust Receipts Act. A later act is usually construed in such manner as not to destroy an existing property right. Thus, in *Standard Motors Securities Corp. v. Yates Co.,* 257 Ill. App. 394, it was held that a statute which gave to persons repairing automobiles a lien for the cost of such repairs could not prevail against the lien of a chattel mortgage which was a prior lien under a prior statute. As we have seen, the rule that a conditional sale is valid although possession is given to the vendee in the absence of an estoppel is not contrary to the public policy of this State.

Again, the defendant contends that if the sales agreement is construed to be a conditional sales contract it is unenforceable by reason of section 23 of the Uniform Sales Act (Ill. Rev. Stat. 1937, ch. 121½, § 23 [Jones Ill. Stats. Ann. 121.27]). That section provides:

"(1) Subject to the provisions of this act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, *unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.*"

Defendant argues that by permitting the automobiles to be placed in the salesroom of a known retail dealer for the purpose of resale, plaintiff is precluded from

asserting its ownership against the defendant under the terms of this statute. The defendant, therefore, says that as matter of law plaintiff could not recover and cites *Illinois Bond & Investment Co. v. Gardner*, 249 Ill. App. 337, and *Sherer-Gillett Co. v. Long*, 318 Ill. 432. The defendant says that in this last case the Supreme Court of Illinois distinguished two kinds of conditional sales contracts—one in which possession of the vendee is accompanied by *indicia* of ownership or the right to sell; the other in which goods are sold conditionally to the vendee for his own use or consumption; that a purchaser from the conditional vendee is vested with absolute ownership if the vendee had the power to resell or if the vendee was vested with *indicia* of ownership by the vendor. There is no doubt that under this section of the Sales Act a plaintiff holding a conditional title may be estopped from asserting his ownership, but we think on the undisputed evidence in this case the plaintiff did not make any representation or do any act on which such an estoppel might be based. Defendant does not stand in the position of a purchaser who buys an automobile offered for sale in a public market in good faith. Defendant is not a "buyer in the ordinary course of trade," as defined by the Uniform Receipts Act. Defendant took possession of the automobiles as the evidence tends to show, without permission of the dealer whose financial partner, without the dealer's knowledge, notified defendant that he was withdrawing his support from the dealer's business, and thereupon defendant, without giving the dealer any notice, immediately moved everything out of his place of business without the assent of the dealer. A transaction of that sort by which an entire stock of automobiles was removed could hardly be said to have been a purchase in good faith and in the usual course of business. There is no basis for an estoppel here

under section 23 of the Sales Act; nor, we hold, is there any basis for estoppel (as defendant argues) because of the failure of plaintiff to file a reply to defendant's answer. As a matter of fact, the evidence for and against was submitted and the issue tried without objection. Thus defendant waived a replication. (*Scholz v. Com'rs of Lincoln Park*, 264 Ill. App. 409; *Central Cleaners & Dyers, Inc. v. Schild*, 284 Ill. App. 267.)

Defendant also contends that there was no competent evidence as to damages. The answer of defendant admits that defendant took possession of these automobiles in the hands of the dealer on January 11, 1936, and that they had been delivered by plaintiff to the dealer on January 7, 8 and 9, 1936. They were, therefore, new automobiles. The branch manager testified that he had been such manager for 15 years and in the employ of the plaintiff for 25 years; that he knew the wholesale value of the automobiles; that his opinion was based on the fact that he had sold thousands of similar automobiles to dealers for the price which he testified was the value of these. He knew the wholesale market value, stated what it was, and the finding of the court was based upon that testimony. In the absence of evidence to the contrary we think this was sufficient.

Defendant says that in event the judgment of the trial court is affirmed we should overrule our former opinions in *Illinois Bond & Investment Co. v. Gardner*, 249 Ill. App. 337; *National Bond & Investment Co. v. Shirra*, 255 Ill. App. 415, and *Gordon Motor Finance Co. v. Aetna Acceptance Co.*, 261 Ill App. 536. Each and all of these are cases in which we applied the law of estoppel under section 23 of the Uniform Sales Act in conformity with rules therein stated. Not one of these cases is inconsistent with the views herein expressed. These same rules have been applied in the

more recent case of *Leopold v. Universal Credit Co.,* 290 Ill. App. 305. The Uniform Trusts Receipts Act does not and apparently was not intended to change the existing law of the State with reference to conditional sales. Defendant has placed in the record a copy of the Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings for 1933, which contains a clear statement of the things which the Uniform Trust Receipts Act was to accomplish. Under the title of "What the Uniform Trust Receipts Act Does," paragraph 3, page 249, it is stated that the purpose of the act is always "expressly limited." *"Hence, the act leaves the existing law of chattel mortgages and conditional sales unchanged, except in peculiar cases which need special coverage."* Prof. Bogart analyzing the act in University of Chicago Law Review, vol. 3, p. 29, says:

"The act is intended to be without effect on the preexisting law of conditional sales and chattel mortgages, nor may the lendor under the act be a consignor of goods who places them with a consignee for sale as agent. The law of consignor and consignee is not intended to be affected by the act."

That the act is a beneficent one we do not doubt, but its provisions cannot avail defendant on this record.

The judgment of the trial court is affirmed.

*Affirmed.*

O'CONNOR, P. J., and McSURELY, J., concur.