NORTH AMERICAN ACCEPTANCE CORPORATION, A CORPORATION, APPELLANT, V. MERLE C. MEEKS, OTHERWISE KNOWN AS MYRLL C. MEEKS ET AL., APPELLEES.

20 N. W. 2d 504

FILED NOVEMBER 9, 1945. No. 31966.

*Leonard A. Hammes*, for appellant.

*Fred N. Hellner*, for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Plaintiff, North American Acceptance Corporation, an Illinois corporation, commenced this replevin action in the district court for Douglas County upon a conditional sale contract to gain possession of a 1942 Packard Clipper sedan. Myrll C. Meeks, the Meeks Service Garage, and Merle W. Ice were made parties defendant but service was not obtained upon Merle W. Ice and the action proceeded against the other defendants. Upon the issues raised, a jury being waived, a trial was had to the court. The court found in favor of the defendant, Myrll C. Meeks, doing business as Meeks Motor Exchange, and that said defendant was entitled to the possession of the 1942 Packard sedan. From this judgment the plaintiff has appealed.

The appellant, North American Acceptance Corporation,

a corporation, will be herein referred to as plaintiff and the appellee, Myrll C. Meeks, as Meeks. In the action the appellee, Myrll C. Meeks, is referred to as Merle C. Meeks but they are the same party, the correct name being Myrll C. Meeks. Likewise, the defendant referred to as Meeks Service Garage is the Meeks Motor Exchange and is the name under which Meeks is doing business.

The record discloses that P. V. Beard was in February 1944, engaged in the garage business and a dealer in cars in Peoria, Illinois. He was carrying on this business under the name of South Side Auto Company. On February 9, 1944, he purchased from the Merry Motor Company of St. Louis, Missouri, the car here involved and took from the Merry Motor Company an assignment in blank of the Missouri certificate of title to said car which had been issued to Wm. L. Frick on December 10, 1941, and by him assigned to the Merry Motor Company on October 2, 1943.

Shortly thereafter, on or about February 11, 1944, Beard sold the car to Merle W. Ice and delivered possession thereof to him. Ice, who lived in Peoria, operated a filling station and was engaged in the selling of used cars. Beard sold the car for $1,900 of which amount Ice immediately paid $750. Ice, who was a member of the Chicago Motor Club through whom the plaintiff operated, then had the conditional sale contract prepared together with an assignment thereof with a draft thereto attached. Ice signed the conditional sale contract and then brought it, together with the assignment thereof and draft thereto attached, to Beard. Beard signed the conditional sale contract, the assignment thereof and endorsed the draft, all in the name of the South Side Auto Company. He deposited these papers in the bank and received credit for the balance of the purchase price in the sum of $1,150. The amount of the conditional sale contract was $1,300.91, for which amount Ice executed and delivered to the plaintiff his installment note payable in 14 installments of $87 and a final installment of $82.91. This conditional sale contract was never filed or recorded in Illinois.

Thereafter, on February 22, 1944, Beard placed Ice's name and address on the assignment of the Missouri certificate of title as assignee and immediately above the assignor's signature wrote in ink that the North American Acceptance Corporation of Chicago had a conditional sale contract lien of $1,300 on the car. After taking a receipt from Ice, showing delivery of said title subject to this lien, Beard delivered the Missouri certificate of title to Ice.

After the certificate of title had been delivered to Ice the plaintiff attempted to get possession thereof by writing to him and also through the Chicago Motor Club, of which Ice was a member, but was unsuccessful in its efforts.

On March 21, 1944, Ice presented the Missouri certificate of title to the Secretary of State of Illinois together with his sworn statement that the same was free and clear of liens. At this time the assignment to Ice of the Missouri certificate of title no longer contained Beard's notation as to the conditional sale contract lien of $1,300 to the North American Acceptance Corporation. The evidence shows that it had been removed by some process but just who did it is not positively shown although presumably it was done by Ice.

The Secretary of State of Illinois thereupon, on March 21, 1944, issued to Ice an Illinois certificate of title showing the car was subject to no liens or encumbrances.

On April 5, 1944, Ice personally contacted Fred King, an automobile dealer in Omaha, Nebraska, and attempted to sell him the car. King had known Ice for about two years prior thereto and knew he was operating a filling station and handling used cars in Peoria. Ice had with him three other people whom he introduced as his wife, brother-in-law and sister-in-law. King did not buy the car but called Meeks on the phone and told him about Ice and the car he had for sale. Meeks has been a dealer in used cars in Omaha for 32 years and is now doing business as the Meeks Motor Exchange. Meeks has known King for many years. Ice then brought the car to Meeks' place of business, telling Meeks the car was clear and showing him his Illinois cer-

tificate of title thereto. Ice further identified himself by his gas ration book and tire certificate. After some negotiations Meeks purchased the car for $1,650. They, Meeks and Ice, then drove out to the Douglas County Bank in Benson, where Meeks did his banking business, and contacted Herbert H. Meile, vice-president of the bank, and negotiated a loan in the amount of the purchase price. At this time the parties checked the serial and motor number on the Illinois certificate of title with those on the car itself and found them to be correct. Meeks then acknowledged Ice's signature of his assignment on the Illinois certificate of title, which assignment was to the Meeks Motor Exchange. Meeks then delivered to Ice two drafts for a total of $1,650, the full amount of the purchase price, which drafts Ice cashed. Meeks thereafter on April 7, 1944, obtained a Nebraska certificate of title to this car in the name of Meeks Motor Exchange. The Illinois certificate of title at the time it was issued showed the car was not subject to any lien or encumbrance and at the time of the negotiations between Ice and Meeks, when Meeks bought the car, Ice told him the car was clear. In the assignment made to the Meeks Motor Exchange when the sale was consummated the parties failed to make any declaration after the statement "Amount of Lien." Ice brought the car into Nebraska without the plaintiff's knowledge or consent.

Thereafter Meeks stayed in possession of the car until the plaintiff commenced this action on April 21, 1944. On May 1, 1944, the parties stipulated that Meeks could deposit $1,300.91 with the clerk of the court and regain possession of the car but it was to in no way affect the rights of the parties and that the deposit was in lieu of possession. The final judgment of the court ordered the clerk to refund this deposit to Meeks.

The conditional sale contract assigned to plaintiff contained the usual provisions in such contracts: That the title should remain in the seller or his assigns until all the conditions thereof had been satisfied; that the car should not be permanently removed from the state without the consent of

the seller; that the seller would not attempt to sell it; and that the seller or his assigns may enforce one or more remedies in the contract provided, either successively or concurrently, and that doing so shall not operate to prevent the seller or his assigns from pursuing any other remedy which he may have.

Ice paid the first two installments due on the contract on March 11 and April 11, 1944. Thereafter, on April 28, 1944, the plaintiff obtained a judgment against Ice in the municipal court of Chicago for the balance of the note plus interest, costs, and attorney fees. This judgment remains unsatisfied.

The conditional sale contract here involved was entered into in Illinois by two residents of that state and was to be fully performed there. It is an Illinois contract. The provisions thereof are not contrary to the public policy of this state and it is therefore enforcible in our courts pursuant to the law of Illinois.

As stated in 2 Beale, The Conflict of Laws, s. 272.2, p. 1001: "Whether a sale of a chattel conditioned on the retention of title by the vendor is legally effective to keep title in the vendor depends upon the law of the place where the chattel was at the time of the sale. So the requirements of acknowledgment and registration applicable are those of the state of situs of the chattel." See, also, Restatement, Conflict of Laws, s. 272, p. 359, and comment "a" under s. 265, p. 351. And, as stated in Restatement, Conflict of Laws, s. 273, p. 360: "If, after a valid conditional sale, the chattel is taken into another state, the vendor's title to the chattel will be recognized in the second state." See 2 Beale, The Conflict of Laws, s. 273.1, p. 1003.

Under the law of Illinois a conditional sale contract need not be recorded. See Ford Motor Co. v. National Bond and Investment Co., 294 Ill. App. 585, 14 N. E. 2d 306.

The law of Illinois is stated in Sherer-Gillett Co. v. Long, 318 Ill. 432, 149 N. E. 225, as follows: "Under the Uniform Sales act, which recognizes the validity of a conditional sale with reservation of title in the seller, where there is no

basis for an estoppel no title can be passed by the buyer of goods under such a contract though he has possession of the goods and the purchaser from him has no notice of the reservation." See Ford Motor Co. v. National Bond and Investment Co., *supra*.

However, section 23, Uniform Sales Act of Illinois, Smith-Hurd Ill. Anno. Stats., ch. 121½, p. 499, provides: "(1) Subject to the provisions of this act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."

Whether or not the plaintiff has, under the facts of this case, by its conduct precluded itself from denying the seller's authority to sell under the provision of this statute, we must look to the Illinois decisions.

The situation presented in National Bond and Investment Co. v. Shirra, 255 Ill. App. 415, is as follows: Defendants bought the Peerless car in question and placed it in the salesroom of the Advance Motor Sales Co. It was placed there for display purposes only and was not to be offered for sale. On October 12, 1926, a conditional sale contract was executed between these parties. It contained the usual provisions that title was to be retained by the seller. On October 22, 1926, the Advance Company sold the car to Ben Baldon, its secretary and treasurer and apparently its sole owner. A conditional sale contract was entered into between the Advance Company and Baldon on that date. On the same day this conditional sale contract was assigned to the plaintiff therein. The car remained in the possession of the Advance Company until November 10, 1926, when Baldon disappeared. The defendant then took possession of the car under the provisions of its conditional sale contract. It further appears that when a Peerless car was sold from the showroom of the Advance Company, from which this car was sold to Baldon, the car on display would not be delivered to the purchaser but a car would be delivered from the

warehouse. The car in question remained on the floor of the salesroom of the Advance Company at all times until it was repossessed by the defendant. The Advance Company was engaged in selling automobiles. It also sold other makes of cars. The question involved was the rights of the respective parties under these two conditional sale contracts. The trial court found for the plaintiff.. In affirming that decision the opinion states the question must be determined under the provisions of the Uniform Sales Act, Smith-Hurd Ill. Anno. Stats., ch. 121½, s. 23, p. 499. As stated in the opinion: "As a general rule, where the true owner of the property allows another to appear as the owner of or to have full power to dispose of the property, so that a third party is led into dealing with the apparent owner, an estoppel may operate against the true owner which would preclude him from disputing the existence of a title which he has caused or allowed to appear vested in another. Drain v. LaGrange State Bank, 303 Ill. 330."

The case of Gordon Motor Finance Co. v. Aetna Acceptance Co., 261 Ill. App. 536, is between two finance companies, each the holder of a conditional sale contract on the same car. Plaintiff sold the car under a conditional sale contract to H. J. Monroe, president of Auburn-Woodlawn Motors, Inc., either individually or as president of the company. The Auburn-Woodlawn Motors, Inc., was engaged in the selling of automobiles in the city of Chicago. Thereafter Monroe turned the car in to his company which sold it to Harold Mandelbaum under a conditional sale contract which was purchased by the defendant. In affirming a judgment in favor of the defendant the court states the basis for its opinion as follows: "Under the doctrine announced in Sherer-Gillett Co. v. Long, 318 Ill. 432, construing section 23 of the Uniform Sales Act (Cahill's St. ch. 121a, par. 26), the Gordon Motor Finance Co., as conditional vendor, retained title to the car as against the purchaser from the conditional vendee, unless it was by its 'conduct precluded from denying the seller's authority to sell,' as provided by section 23. The determination of the question of estoppel under

the statute depends upon the facts and circumstances attending the sale." The court then goes on to say: "However, we do not believe the protection of the statute should be extended to those who by their own acts place the indicia of ownership in a person or corporation under circumstances where it can be reasonably foreseen that fraud on innocent persons will result therefrom."

The case of L. B. Motors, Inc. v. Prichard, 303 Ill. App. 318, 25 N. E. 2d 129, discloses the following situation: The plaintiff was engaged in the automobile business in Chicago. Plaintiff sold the car in question to Hunt, a car dealer located at Plano, Illinois, under a conditional sale contract but did not deliver to Hunt the certificate of title to the car. Hunt then sold the car on conditional sale and sold the conditional sale contract to the defendant. This action involves the rights between these two conditional sale contract holders. From a judgment for the defendant the plaintiff appealed. The judgment was affirmed.

Applying the facts of this case, as disclosed by the record, to the law of Illinois under this statute as it has been decided by the decisions of that state, we think the lower court was right in finding in favor of Meeks.

Meeks complains that the court did not allow any damages when it found for the defendant and ordered a return of the money deposited in lieu of the car. In Schrandt v. Young, 62 Neb. 254, 86 N. W. 1085, this court in answer to the inquiry as to what is the measure of damages stated: "Ordinarily it is interest upon the value of the property. Hooker v. Hammill, 7 Nebr., 231; Hainer v. Lee, 12 Nebr., 452; Dodge v. Runels, 20 Nebr., 33." As stated in State Bank of Omaha v. Murphy, 110 Neb. 526, 194 N. W. 442: "In an action of replevin, a plaintiff who wrongfully seized an automobile truck under the writ is liable for interest on its adjudicated value from the time of the seizure until he returns it or pays for it, where the net usable value is not shown by the evidence." And as stated in Stull v. Taylor, 121 Neb. 200, 236 N. W. 442: "In an action for replevin where the property in suit is returned, damages for its de-

tention, in the absence of special damages shown, are limited to the extent of lawful interest on the value of the property during the time it was wrongfully detained." The trial court should have allowed the defendant six percent interest on money deposited in lieu of the car from the date the car was seized.

As modified, the judgment of the lower court is affirmed.

AFFIRMED AS MODIFIED.