THE WESTERN UNION COLD STORAGE COMPANY

*v.*

THE BANKERS' NATIONAL BANK OF CHICAGO.

*Opinion filed October 24, 1898—Rehearing denied December 8, 1898.*

SALES—*bona fide purchaser from one clothed with apparent ownership is protected.* A bank extending credit on a bill of lading for goods sold on the personal security of the pledgee without notice of the seller's claims is protected against the latter, as, where one of two innocent persons must suffer from the fraud of a third, the loss should fall on him whose imprudence rendered fraud possible.

*Bankers' Nat. Bank v. Cold Storage Co.* 73 Ill. App. 410, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. EDMUND W. BURKE, Judge, presiding.

The opinion of the Appellate Court for the First District, by Mr. Justice WINDES, is as follows:

"Appellee brought trover against appellant to recover the value of one hundred and one boxes of turkeys. Appellant pleaded not guilty, and property in defendant.

By agreement the cause was referred to a referee to take testimony and report his conclusions of law and fact. The referee reported, in substance, viz.:

"On the morning of March 21, L. E. Newman & Son purchased from defendant one hundred and one boxes of turkeys at 13¾ cents per pound, being 20,132 pounds. The turkeys were delivered by defendant about twelve o'clock· at the Michigan Central depot and a receipt taken, which reads that the turkeys were received from L. E. Newman & Son to be delivered to Conron Bros., New York City, the receipt being made on a blank receipt of the cold storage company, the name of L. E. Newman being substituted for that of the cold storage company.  This receipt was on the same day delivered to Newman by defendant's messenger, and with its knowledge, at the plaintiff's bank some time between twelve and one o'clock, and that the banks of Chicago close on Saturdays at twelve M.  About half-past eleven a draft was drawn by L. E. Newman & Son for $3000 on Conron Bros., payable to the order of the plaintiff.  Newman offered the drayage receipt as collateral to the draft, which was refused by Mr. Craft, the cashier.  Said draft was deposited, with other deposits, to the account of Newman & Son, and then Newman went immediately to the railroad office and secured a bill of lading and returned with it to the bank within an hour after the receipt was presented, and the bill of lading was attached to the draft.  The consignee's name in the bill of lading was written 'Curon Bros.,' without the addition of the word 'order' or any other condition or limitation.  Early the following Monday morning Newman & Son learned by telegraph that the draft had been turned down, and then drew all the money to their credit out of the bank, amounting to between $5000 and $6000, before the bank knew the draft was dishonored.  During the week ending March 21 Newman & Son drew out of the defendant's bank $9322.18.  The shipment to Conron Bros. was intended to be a partnership deal.  Conron Bros.

refused to go into the deal and turned down the draft, which has never been paid.  On the afternoon of the day of the sale defendant presented to Newman & Son, at their place of business, an itemized bill for the turkeys, which was not paid, and they sent a statement of the same the following Monday, which was not paid; that among the conditions of the bill of lading was: 'If the word *order* is written herein immediately before or after the name of the party to whose order the property is consigned, without any condition or limitation other than the name of the party to be notified of the arrival of the property, the surrender of this bill of lading, properly endorsed, shall be required before the delivery of the property at destination.  If any other than the aforesaid form of consignment is used, the said property may, at the option of the carrier, be delivered without requiring the production or surrender of this bill of lading.'  The Monday following said sale Newman & Son ceased doing business, and subsequently paid all their creditors, except defendant, twenty-five cents on the dollar; that on the 23d day of March appellant sent Newman & Son a letter rescinding the sale; that when the turkeys arrived in New York they were replevined by the defendant; that the bank filed its claim of property, and a stipulation was entered into dismissing suit without prejudice.  At the time the turkeys were taken to New York they were worth fifteen cents per pound, or $3019.80, and the cold storage paid out for freight, etc., $224.38, leaving the value of the turkeys $2794.92; that Newman & Son, for two years prior to March 21, had been depositors in plaintiff's bank, which cashed many drafts for them of similar nature.  At the time of the transaction Newman & Son made all its deposits with plaintiff; that plaintiff was familiar with the business of Newman & Son and their methods in a general way; that the bank at no time made any inquiries as to the ownership of the turkeys; that the bill of lading was not at any time endorsed or assigned to any one by

Conron Bros., the consignee, or any one else. Referee believes that by delivering to Newman & Son the drayage receipt, defendant placed it in their power to deal with it as their own and enabled them to procure credit; that the fact that Newman appeared anxious to have the receipt sent to the bank should have put defendant on its guard; that the transaction between Newman and the bank was a common one. Recommends a judgment in favor of the plaintiff.

"Exceptions were filed with the referee and argued before the court by appellant, and judgment entered for appellee of $2867.12 and costs, from which this appeal is prosecuted.

"Appellee contends that if it fails to appear from the abstract that any exception was taken by appellant to the overruling of his exceptions to the referee's report, to its confirmation or to the entering of judgment by the court, and that because the referee's report is made a part of the bill of exceptions, it is not a part of the record, and therefore there is no question for this court to consider except to determine whether the pleadings are sufficient to sustain the judgment. The abstract shows, after order overruling defendant's exceptions and confirming referee's report and entering judgment on report, 'exception by defendant.' The record shows one order of the court, as indicated by the abstract, and as part of it the following: 'Thereupon the defendant, having entered its exceptions herein, prays an appeal,' etc. The bill of exceptions is incorporated in the record by the clerk and made a part of the record by stipulation of the attorneys of the respective parties. The statute concerning referees also makes the testimony of witnesses taken before the referee, together with all exhibits and papers introduced in evidence and the report of the referee, a part of the record of the cause. We therefore think that, in view of the stipulation and the statute, it can make no difference that the referee's report and evi-

dence is incorporated in a bill of exceptions instead of the record proper. The bill of exceptions shows that numerous objections in writing were filed with the referee and overruled by him, and the exceptions to said report were heard by the court, after which they were overruled, to which ruling the defendant excepted, and thereupon the court confirmed the report of the referee and entered judgment for the plaintiff, to which the defendant excepted. The abstract of the bill of exceptions fails to show the overruling of the defendant's exceptions and the exception to the entry of the order of judgment, but we think that is sufficiently shown, as above stated, and therefore we are of the opinion that appellee's contentions are not tenable.

"Numerous propositions of law on behalf of appellant were held and refused by the court, but we think it unnecessary to consider the court's action in that regard, because the submission of propositions of law may be dispensed with in cases heard before a referee, under the statute. The parties may raise, by exceptions to the report, any questions of law. *Sanitary District* v. *Cook*, 169 Ill. 184.

"Also, from a careful examination of the evidence, we are satisfied the referee reported the facts correctly, that his conclusions thereon are in accordance with the law of this case, and there was no error in confirming his report, nor in the entry of judgment in favor of appellee. The sale by appellant to Newman & Son was not shown to be a sale for cash, on delivery of the turkeys, and the circumstances in evidence clearly show a delivery to the transportation company by appellant for Newman & Son, with the knowledge on its part, or knowledge of facts sufficient to cause it to believe, that Newman & Son intended to pledge the turkeys to the appellee. There was no notice to the bank that Newman & Son were not the owners of the turkeys, nor was there any circumstance in the transaction between it and Newman & Son to put

the bank on inquiry as to their ownership. We think the evidence quite clear that the bank was in the position of *bona fide* purchaser for value, without notice of any rights of appellant; that appellant is to blame for placing Newman & Son in a position to perpetrate a fraud upon it, as is claimed. This case is clearly one for the application of the rule of law that when one of two innocent persons must suffer from the fraud of a third, the loss shall fall on him who, by his imprudence, enabled such third person to commit the fraud. (*Michigan Central Railroad Co.* v. *Phillips*, 60 Ill. 190, and cases cited; *Western Union Railroad Co.* v. *Wagner*, 65 id. 197; *Williams* v. *Fletcher*, 129 id. 356.) We think the *Phillips case, supra,* is decisive of the case at bar.

"We have examined the cases of *Stone* v. *Railway Co.* 9 Ill. App. 48, *Barnard* v. *Campbell*, 55 N. Y. 456, *Howland* v. *Woodruff*, 60 id. 73, and *Canadian Bank* v. *McCrea*, 106 Ill. 281, (which seem to be especially relied on by appellant,) as well as numerous other cases cited, but are of opinion they are readily distinguishable from the *Phillips case, supra,* as well as the case at bar.

"We think the statute relating to warehouse receipts has no application to bills of lading, and therefore the cases cited by appellant on its contention in that regard are not applicable to this case.

"The judgment is affirmed."

MASTERSON & HAFT, for appellant.

H. H. C. MILLER, and W. S. OPPENHEIM, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The additional brief filed by appellant objects to the language of the Appellate Court which holds that the sale to Newman & Son by the appellant is not shown to be a sale for cash on delivery, and to its further holding that "there was no notice to the bank that Newman &

Son were not the owners of the turkeys, nor was there any circumstance in the transaction between it and Newman & Son to put the bank on inquiry as to their ownership." In *Michigan Central Railroad Co.* v. *Phillips*, 60 Ill. 190, it was said (p. 195): "The property here, where nothing remained to be done to complete the sale, either to identify the property or ascertain the price, was intrusted to the possession of the purchaser, by the consent of the owner, under the form of a regular sale and delivery, and in the completion of the same, and by its being thus placed under his control Ames was enabled to obtain credit by pledging it to an innocent party. The sellers did not see fit to exact payment at the time, as they might and should have done where rights of innocent purchasers might intervene, but trusted to the personal security of Ames until the following morning, and the consequence of this misplaced confidence should be borne by them rather than that the bank should be the sufferer by it."

Where a *bona fide* purchaser for a valuable consideration, without notice, acquires the possession of property from one who has trusted to the personal security of another, the rule of judicial decision of this State is that such *bona fide* purchaser is protected, because where one of two innocent persons must suffer from the fraud of a third party, the loss should fall on him who, by his imprudence, enabled such third person to commit the fraud. The statement of facts in the opinion of the Appellate Court and the adjudication of the case by that court are in accordance with this principle, and we concur in that opinion and adopt the same.

The judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*