## JENNIE WEGERSLEV v. MIDLAND NATIONAL BANK & TRUST COMPANY AND ANOTHER.[1]

November 6, 1931.

No. 28,532.

*Jonas Weil, Joseph J. Granbeck,* and *Ralph M. McCareins,* for appellant.

*Ueland & Ueland,* for respondent.

[1]Reported in 238 N. W. 792.

OLSEN, J.

Plaintiff appeals from a judgment in favor of the defendant bank.

Plaintiff brought suit to recover the sum of $3,263.73, which she claims came into the hands of the defendant bank as a trust fund belonging to plaintiff under circumstances hereinafter stated. It is further charged that at the time it received this money the bank had notice and knowledge of the fact that the money was a trust fund belonging to plaintiff, and that with such notice and knowledge it wrongfully appropriated the money to its own use by applying the same in payment of a preëxisting debt owing to it by defendant Chisholm.

After trial before the court without a jury the court made commendably brief and clear findings covering the issues in the case. The findings cover a number of facts not in dispute which we need not state. On the vital issue or issues, as we consider them, the court found that "defendant Chisholm, with the knowledge and consent of plaintiff, and having written authority so to do, deposited said check to his own credit in his own account with the defendant Midland National Bank & Trust Company." This refers to the $5,000 check hereinafter set out.

A further finding is "that the other allegations of the complaint in so far as they apply to the Midland National Bank & Trust Company of Minneapolis have not been sustained by the preponderance of the evidence." This finding negatives the allegations of the complaint that the money was a trust fund; that it belonged to plaintiff; and that the defendant bank, at the time it received the money and applied it on Chisholm's indebtedness, had notice and knowledge of the fact that the money was a trust fund belonging to plaintiff.

These two findings above quoted are challenged as contrary to and not sustained by the evidence. If these two findings are sustained by the evidence, that ends this appeal and the judgment in favor of the bank must stand. If contrary to or not sustained by the evidence, then plaintiff is entitled at least to a new trial.

Plaintiff brought proceedings under the workmen's compensation act to recover compensation for the death of her husband. Defend-

ant William A. Chisholm was employed as her attorney in the matter. A settlement was arrived at whereby the Employers Mutual Liability Insurance Company, the insurer of the husband's employer, agreed to pay plaintiff $5,000 in settlement of her claim. The insurance company's adjuster thereupon, on October 22, 1927, made a check in payment, reading as follows:

"To National Exchange Bank

"St. Paul, Minnesota

"October 22, 1927

"Pay Exactly Five Thousand
"Dollars....No Cents          Dollars,          $5,000.00

"To the order of Jennie Wegerslev and W. A. Chisholm, her attorney

"Being for full and final compromise settlement of any and all claims vs. the New Marquette Garage.

"J. M. Sweitzer
"Adjuster"

The check was delivered to Mr. Chisholm on or about October 31, 1927. Prior to or at that time, according to his testimony, he received a letter from plaintiff wherein she stated:

"You may indorse the check and either you or she [referring to her sister, Mrs. Henderson] mail balance to me with an itemized statement, and I will mail you a receipt covering the amount due you."

Defendant Chisholm indorsed the check on the back thereof:

"Jennie Wegerslev
"W. A. Chisholm
"Wm. A. Chisholm
"her attorney" ·

He had at that time, and had kept for some time prior thereto, a personal checking account in defendant bank. On October 31, 1927, he deposited the check, so indorsed, in this account to his individ-

ual credit. He received credit for the amount of the check, and the check was promptly paid to defendant bank by the St. Paul bank on which drawn. His credit balance in the account, before the check was deposited, was $74.85. On November 10, 1927, his credit balance had, by payments of checks drawn by him on the account, been reduced to $3,572.77. On November 9 two garnishee summonses were served on the bank in two actions by other parties against Chisholm. He was indebted to the defendant bank on notes to the aggregate amount of $3,263.73, which were past due and had been owing to the bank since May, 1926, or prior thereto. When the garnishee summonses were served the bank decided to offset and apply his checking account balance to the extent necessary to pay his note indebtedness to the bank, and entered on its books on November 10, 1927, debit charges to his checking account to the amount of $3,263.73 in payment of his notes, leaving a credit balance of $309.04, which balance Chisholm later checked out.

The bank held the usual debtor's agreement, giving it a lien upon Chisholm's deposit account and authorizing the bank to apply any balance of such account upon any overdue indebtedness of his to the bank.

Chisholm's indebtedness to the bank was secured by two real estate mortgages and by other collateral held by the bank, sufficient, so far as appears, to secure the same. Thereupon or about November 12, 1927, the defendant bank returned to Chisholm all collateral so held and delivered to him satisfactions of the two mortgages. He accepted the return of the collateral and accepted and recorded the satisfactions of the mortgages.

The rules to be applied to the facts here presented have been quite clearly settled by recent decisions of this court.

The bank incurs no liability by merely accepting a deposit of funds from a fiduciary and crediting same to his personal account, whether with or without notice of the trust.

The bank is liable for the loss of trust funds deposited with it in the name of the trustee when, having actual notice of the character thereof, it acts in bad faith by aiding the fiduciary to misappropriate the funds. It is liable also if it receives for itself trust funds from

the trustee under circumstances charging it with constructive knowledge of their trust character. Finally, it is liable if it receives and retains trust funds for its own use or benefit without notice or knowledge of their true character, unless it has so changed its position that it has acquired equities equal or superior to the rights of the owner, for instance, where it applies such funds upon a past due indebtedness of the trustee to itself.

The bank may, without incurring liability, pay checks to others, drawn by the fiduciary upon trust funds on deposit, unless at the time of such payment it has actual or constructive knowledge that the fiduciary is by means thereof intending to divert or actually wrongfully diverting the money.

■ If the bank appropriates the trust fund to the payment of a prior indebtedness owing by the trustee to the bank, with constructive or actual notice or knowledge of the trust character of the fund, the bank is liable; and it cannot then avoid liability by showing a change in its position whereby it may suffer detriment. Platts v. Metropolitan Nat. Bank, 130 Minn. 219, 153 N. W. 514; Agard v. Peoples Nat. Bank, 169 Minn. 438, 211 N. W. 825, 50 A. L. R. 629; Berg v. Union State Bank, 179 Minn. 191, 229 N. W. 102; Rodgers v. Bankers Nat. Bank, 179 Minn. 197, 229 N. W. 90.

■ The court found, as stated, that defendant Chisholm, with the knowledge and consent of the plaintiff and having written authority so to do, deposited the $5,000 check in his own account with the bank. This finding is based on the letter from plaintiff, already quoted, wherein plaintiff authorized Chisholm to indorse the check and to mail her share thereof to her. The letter cannot be so construed as to sustain the finding. It was clearly authority to Chisholm only to indorse the check, cash it, and remit to plaintiff. No authority can be spelled out from the letter to authorize Chisholm to retain the fund or deposit it to his own account.

The next finding challenged, negativing any notice or knowledge by the bank that this was a trust fund owned by plaintiff, is next to be considered.

The $5,000 check, as shown, was payable to plaintiff and to Chisholm as her attorney. It recited on its face that it was in full

settlement of all claims of plaintiff against the New Marquette Garage. Words of this kind on checks deposited were held, in Rodgers v. Bankers Nat. Bank, 179 Minn. 197, 229 N. W. 90, to charge the bank with constructive notice of the trust character of the funds. In this case we have additional undisputed evidence tending to show at least constructive, if not actual, notice to the bank of the trust and of plaintiff's interest in the fund.

Trygve Oas was the vice president of the bank and active in its management and business. He testified frankly that he had been well acquainted with Chisholm since May, 1926, and personally opened the account with Chisholm in the bank; that he had more to do with his account than any other officer; that he knew Chisholm was practicing as an attorney and depositing funds received by him for clients; that he made or assisted to make the loans to Chisholm which resulted in the indebtedness upon which the checking account was applied on November 10, 1927; that he had many conversations with Chisholm prior to October 31, 1927, about his notes to the bank and his means for payment thereof; that they desired and were asking to have the indebtedness paid; that Chisholm informed him of the Wegerslev case and stated he was to receive a substantial fee therein; that when the case was concluded he would pay his notes; that he noticed the deposit credit of $5,000 in Chisholm's account. Mr. Oas was informed on November 10, 1927, by the cashier that Chisholm's deposit account was being applied on his notes. On the same day he had a conversation with Chisholm about the matter. He does not remember whether he asked Chisholm if the $5,000 deposit was money from the Wegerslev case or whether Chisholm volunteered the statement that it was not. The inference seems inescapable that Oas made some inquiry of Chisholm as to whether this money was from the Wegerslev case. This evidence, together with the face of the $5,000 check, permits of but the one conclusion, that prior to and at the time the bank surrendered its notes and collateral to Chisholm it had at least constructive notice of the trust character of the funds applied on the notes and of plaintiff's interest therein. The inquiry made by Oas of Chisholm indicates that he had sufficient knowledge of the situa-

tion so that he was put on inquiry. But, as held in the Rodgers case, 179 Minn. 197, 229 N. W. 90, the bank could not safely accept the fiduciary's assurance. Mr. Oas did testify that he had not seen the check.

The finding of the trial court that the plaintiff had failed to prove by a preponderance of the evidence that the bank had any actual or constructive notice of the trust character of the fund in question or of plaintiff's interest therein is not sustained by the evidence.

■ Defendant bank contends that, as Chisholm had a contract with plaintiff whereby he was to receive as fees 50 per cent of any amount recovered for her, she cannot now recover in any event more than $2,500, or one-half of the fund, from the bank. Our statute, G. S. 1923 (1 Mason, 1927) § 4267, provides that no such contract shall be valid or binding unless approved by a judge of the district court or, in certain cases, by the industrial commission. No such approval has been given, and no court would under the circumstances grant large, if any, fees to Chisholm.

It is suggested that plaintiff, because in her letter she directed Chisholm to indorse the check and mail her the balance with an itemized statement, should stand in the same position as if she had voluntarily paid Chisholm his fees. The letter imposed the condition that the balance be mailed to her with itemized statement. This has never been done. There has been no voluntary payment.

It is argued that, as Chisholm had withdrawn some $1,700 of the $5,000 before November 10, 1927, the bank might assume that this $1,700 was withdrawn on plaintiff's account. We do not so hold. Neither do we sustain the theory that because Chisholm had authorized the bank, a long time prior to this transaction, to apply his checking account on any overdue indebtedness of his, the bank had the right to apply the money the way it did. This agreement must be held to apply to money in the account belonging to Chisholm and not to money of someone else, where the bank had constructive notice that the money did not belong to Chisholm.

That the defendant bank changed its position by returning its notes and collateral to Chisholm is undisputed; but, as already

noted, that is not a defense when at the time and before it so changed its position the bank had constructive notice of the fact that the fund appropriated was a trust fund belonging to someone else.

Defendant bank cites the rule that where one of two innocent persons must suffer loss the loss should fall on the one who has enabled the wrongdoer to cause the loss. The rule does not apply where, as here, one of the two persons who must suffer the loss is at fault.

The claim that plaintiff has been guilty of such laches as to bar recovery is found not sustained by the evidence or findings.

We may add that, as recovery was had against Chisholm and no appeal taken by him, if recovery is finally had against the bank or payment made by it, the bank should be entitled to the benefit of the judgment against Chisholm to the extent of what it shall pay.

Judgment reversed.

WILSON, C. J. and HOLT, J. took no part.