Donald Mori, Appellee, v. Chicago National Bank, Appellant.

Gen. No. 46,259.

Opinion filed June 22, 1954. Released for publication July 9, 1954.

TAYLOR, MILLER, BUSCH & MAGNER, of Chicago, for appellant; JOHN S. MILLER, THOMAS E. DEACY, JR., and JAMES J. HOFFNAGLE, all of Chicago, of counsel.

JOHN P. TIZ, of Chicago, for appellee.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a judgment on verdict entered in the amount of $1,600 for conversion of plaintiff's automobile. Plaintiff, desiring to sell his 1949 Buick convertible coupe, saw one Hegland, who operated a used car sales business. Hegland would make no offer on the car, but suggested that plaintiff leave it with him for the purpose of procuring bids, for which Hegland would receive a commission of either $25 or $50, depending upon the price received for the car. Mori said he would consider the suggestion. Some days later Hegland called Mori and asked that he bring his car to him in order that he might more easily invite bids on it. Following this call, Mori on August 21, 1952, had the car delivered to Hegland's place, where it was parked in front of the display room. The following morning, August 22, Hegland went to the defendant bank with which he had been dealing for eight months, executed a bill of sale to the bank for two cars, one of which was Mori's, and gave the bank a trust receipt together with a promissory note for $1,450. Relying solely upon the oral representations of Heg-

land, without any further investigation or asking for a certificate of title, the bank gave him a draft for $1,450. Hegland decamped shortly thereafter. On August 26 the bank discovered this and a check revealed that Hegland had committed a number of frauds in addition to the one here in question. Defendant took possession of some of the automobiles, including that owned by Mori. Mori learned of the situation, made demand for his car, which was refused, and then instituted this suit. It is admitted that Hegland had no title to the car nor authority to sell and that no evidence of title of any kind was vested in him, short of his possession of the car.

Whatever title the defendant has must rest on the doctrine of estoppel. This is an equitable doctrine taken over by the law. It is based upon the conduct of the true owner, whereby he has allowed another to appear as the owner, or as having full power of disposition over the property, so that an innocent person is led into dealing with such apparent owner. *Drain v. LaGrange State Bank,* 303 Ill. 335–6; *Union Stock Yards & Transit Co. v. Mallory,* 157 Ill. 554; *Chickering v. Bastress,* 130 Ill. 206; *Van Duzor v. Allen,* 90 Ill. 499. Where one of two innocent persons must suffer for the fraud of a third, the loss should fall on him who, by his imprudence, negligence, or culpability, enabled such third person to commit the fraud. In its application, owners have been estopped from asserting title as against innocent purchasers where they have delivered not only possession but *in addition some instrument evidencing ownership or authority to sell or encumber the entrusted chattel. Western Union Cold Storage Co. v. Bankers' Nat. Bank of Chicago,* 176 Ill. 260; *J. L. McClure Motor Co. v. McClain,* 34 Ala. App. 614, 42 So.2d 266; *Carter v. Rowley,* 59 Cal. App. 486,

211 Pac. 267; *Meadows v. Hampton Live Stock Commission Co.*, 55 Cal.App.2d 634, 131 P.2d 591; *Commercial Finance Corporation v. Burke,* 173 Ore. 341, 145 P.2d 473; *Jackson v. Waller,* 190 Tenn. 588, 230 S.W.2d 1013; *Fisher v. Thumlert,* 194 Wash. 70, 76 P.2d 1018; cf. *Mason v. Shelton,* 292 Ill. App. 640, 11 N.E.2d 224; *Ohio Motors v. Russell Willis, Inc.,* 193 Tenn. 524, 246 S.W.2d 963; *Buckley v. Matheson,* 120 Wash. 212, 206 Pac. 935. See, generally, cases cited in 19 Am. Jur. (1953 cum. supp., p. 56 *et seq.*); 18 A.L.R.2d 813 *et seq.*

██ A difficulty arises in the application of the doctrine where possession, without more, is given a dealer selling similar chattels in the ordinary course of business. Possession is one of the indications of title, but mere possession of chattels, if there is no other evidence of property given by the owner, will not enable the possessor to give good title. "Owners of chattels must frequently intrust others with their possession, and the affairs of men could not be conducted unless they could do so with safety, so long as the possession of the chattel is not accompanied with some indicium of ownership or the right to sell. (24 R. C. L. 375.)" *Drain v. LaGrange State Bank, supra.* Nonetheless, although mere possession be delivered by a manufacturer, wholesaler, or other conditional vendor, mortgagee, lienor or general creditor to a retail dealer, because delivered for the apparent purpose of resale, a condition that title shall remain in the seller until the price is paid, or that the chattels are to be used as samples only, is ineffectual as against a *bona fide* purchaser from the retailer. *National Bond & Investment Co. v. Shirra,* 255 Ill. App. 415; *L. B. Motors, Inc. v. Prichard,* 303 Ill. App. 318; *Mason v. Shelton, supra;* cf. *Commercial Credit Corp. v. Horan,* 325 Ill. App. 625; *Gordon Motor Finance Co. v. Aetna Accept. Co.,*

261 Ill. App. 536; but cf. *Ford Motor Co. v. National Bond & Investment Co.,* 294 Ill. App. 585. See also *Illinois Bond & Investment Co. v. Gardner,* 249 Ill. App. 337; *Associates Discount Corporation v. Crow* (C. C. A. D. C.), 110 F.2d 126; *Associates Discount Corporation v. Hardesty* (C. C. A. D. C.), 74 App. D. C. 44, 122 F.2d 18; *Commercial Credit Co. v. Barney Motor Co.,* 10 Cal.2d 718, 76 P.2d 1181; *Jones v. Commercial Investment Trust,* 64 Utah 151, 228 Pac. 896. A different result in these situations would not only impede commercial transactions (*Illinois Bond & Investment Co. v. Gardner, supra*), but the general public, the individual buyer, would be the dupe of every fraud (*Gordon Motor Finance Co. v. Aetna Accept. Co., supra*).

██ However, this doctrine is viewed differently where the initial transaction is not one of sale but of consignment, bailment or agency for a special purpose which is not accompanied by any authority to sell, implied or express, or other indicia of title beyond possession. Courts realize that these relationships are equally important for the transaction of commerce; that the proper, lawful and convenient conduct of the owner should not be turned to his disadvantage; and that to declare that possession and nothing more is sufficient to raise an estoppel would seriously impede such business. *Levi v. Booth,* 58 Md. 305; *Nelson v. Wolf,* 4 N. J. 76, 71 A.2d 630; *Smith v. Clews,* 114 N. Y. 190; *Green v. Wachs,* 254 N. Y. 437; and cf. *Drain v. LaGrange State Bank, supra; Commercial Credit Corp. v. Horan, supra; Ford Motor Co. v. National Bond & Investment Co., supra; Eatonville State Bank v. Marshall,* 170 Wash. 503, 17 P.2d 14. See also 2 Williston on Sales, sec. 314, n. 11; sec. 315, n. 14 (rev. ed. 1948); 57 A. L. R. 393 *et seq.*

Two cases are sometimes cited as holding a contrary view. These are *Carter v. Rowley,* 59 Cal. App. 486, 211 Pac. 267, cited earlier, and *Heath v. Stoddard,* 91 Me. 499, 40 Atl. 547. However, in the *Carter* case, *supra,* a reading of the opinion will disclose the fact that the automobile owner also signed a statement of transfer which he delivered to the dealer together with his automobile. In the *Heath* case, *supra,* the owner gave possession of his piano to a dealer who then, without actual authority, sold it to one of his customers. The court held that the owner was estopped. Williston (sec. 315, n. 15), *supra,* cites that case as containing "slight additional circumstances" turning the scale. That case relied on the *dictum* of LORD ELLENBOROUGH in *Pickering v. Bush,* 15 East. 38, announcing the general principle that where a commodity is sent in such a way and to such a place as to exhibit an apparent purpose of sale, the owner will be bound and the purchaser safe. In that case the person in possession was given implied authority to sell, and it was on that basis that the original owner was estopped. The authority to sell was implied from the request of the owner that the goods be transferred on the books to the name of the broker (which was done). This, according to ELLENBOROUGH, invested the broker with all the indicia of property, that is, possession and ostensible title. This puts the decision in accord with LORD ELLENBOROUGH's position in *Wilkenson v. King,* 2 Campb. 335, decided three years earlier, where he held that a wharfinger who was accustomed to sell lead from his wharf could not give the defendants a valid title to lead intrusted to him at his wharf by the plaintiff without authority to sell.

In the application of the doctrine of estoppel, not only the conduct of the owner must be measured

by the court, but equally important, the conduct of the one seeking its benefits. *Czesna v. Lietuva Loan & Savings Ass'n*, 252 Ill. App. 612; *General Finance Corp. v. Nimrick*, 319 Ill. App. 98; *Stark v. Stephens*, 76 Colo. 550, 233 Pac. 619; *Andreae v. Wolgin*, 257 Mich. 572, 241 N. W. 876; *Wegerslev v. Midland Nat. Bank & Trust Co.*, 184 Minn. 393, 238 N. W. 792; 31 C. J. S., Estoppel, p. 329. And cf. *American Building Maintenance Co. v. Indemnity Ins. Co.*, 214 Cal. 608, 7 P.2d 305; *Dennis v. Bank of America Nat. Trust & Savings Ass'n*, 34 Cal.App.2d 618, 94 P.2d 51.

■■ This State has recognized that theft and fraud are frequent offenses in connection with the sale of automobiles and has afforded a speedy and convenient method of establishing ownership by providing for certificates of title to be issued to the owners of cars. (Uniform Anti-Theft Act, Ill. Rev. Stat. 1951, chap. 95½ [Jones Ill. Stats. Ann. 85.075–85.094].) Some States have by statute made it mandatory that such certificates of title accompany sales of automobiles before the purchaser can be protected in his purchase from a dealer. *Farmers & Merchants State Bank v. Hunter*, 166 Kan. 52, 199 P.2d 196; *Crawford Finance Co. v. Derby*, 63 Ohio App. 50, 25 N.E.2d 306. Our State has not gone that far. In *L. B. Motors, Inc. v. Prichard*, 303 Ill. App. 318, it was held that the act in question was not a recording act and that a purchaser was not compelled to look to the certificate of title to determine whether the seller was the owner. However, in *General Finance Corp. v. Nimrick*, 319 Ill. App. 98, this court (Third Division) held that one seeking the benefits of an estoppel against the owner in his purchase from a dealer has the burden of showing that he did not know of the title of the true owner, had no ready means of ascertaining it, and "relied on the ap-

pearance of ownership (citing cases)." The certificate of title and endorsement thereof furnishes a ready means of ascertaining the true ownership of an automobile. Such a certificate is not a prerequisite to a valid sale, but failure to get it is an incident which, taken together with other evidence, can establish neglect on the part of the purchaser. Defendant's reliance upon the dealer's verbal representations of ownership without resort to readily ascertainable means of determining ownership precludes it from invoking the doctrine of estoppel.

*Judgment affirmed.*

ROBSON, J., concurs.

TUOHY, J., took no part.