Westlake Finance Company, an Illinois Corporation, Appellee, v. Oak Park Motors, Inc., an Illinois Corporation, et al., Defendants. Appeal of Oak Park Motors, Inc., Appellant.

Gen. No. 47,486.

First District, Third Division.

February 27, 1959.

Released for publication March 20, 1959.

Edward P. McKeown, Raymond J. Boland, of Chicago, for appellant.

Louis P. Yangas, Albert E. Bennett, of Chicago, for appellee.

JUSTICE BURKE delivered the opinion of the court.

In a complaint in chancery Westlake Finance Company sought damages against Oak Park Motors, Inc., Evelyn Grunst, also known as Evelyn Slaughter, and Donald Slaughter because of wrongful, "fraudulent and improper" acts and asked that the rights of the parties to a Ford Mainline Tudor automobile be adjudicated and that plaintiff be declared to have an equitable lien on the automobile. A trial resulted in judgment in favor of the plaintiff and against Oak Park Motors, Inc., and the two individual defendants for $2234.04. Oak Park Motors, Inc., hereinafter called the defendant, appeals.

Plaintiff is a finance company with offices in Maywood, engaged in purchasing conditional sales contracts and notes from automobile dealers in connection with the sale of automobiles to the general public. The defendant is an automobile dealer engaged in business in Oak Park. Evelyn Grunst, who lives in Maywood,

married Donald Slaughter on June 25, 1955. She was the owner of a 1950 Plymouth Convertible automobile. On September 10, 1955, the Slaughters came to the premises of the defendant and selected a new Ford Mainline automobile. The purchase price was $2283.-05. Credits of $372.50 on a trade-in of the 1950 Plymouth car and a cash down payment of $10.55 were given, leaving a balance of $1900 to be financed by the purchasers. The balance of $1900 was financed by the plaintiff at the request of the Slaughters and the defendant, which accepted a check from the plaintiff for $1995. The $95 was a "commission" paid by the plaintiff to the defendant for the sale of the contract and note. On September 12, 1955, the date of the sale of the automobile, Chester R. Smith, defendant's salesman, had Evelyn Slaughter sign an application for certificate of title in blank in the name of Evelyn Grunst. She wanted to keep the 1955 License plates issued in her maiden name. On August 30, 1955, the Slaughters had submitted to plaintiff, through Maywood Motors Co., an application for credit.

Defendant's salesman, Smith, and the Slaughters went to the office of plaintiff on September 12, 1955, and in response to Mr. Smith's inquiry whether plaintiff would purchase the contract of Evelyn Slaughter he was told the plaintiff had a credit application on her, and if the conditions were the same would buy the conditional sales contract. Smith was told by plaintiff's agent to submit the deal on the conditional sales contract form used by plaintiff. Plaintiff's employees helped fill out the conditional sales contract and promissory note which was then signed by the Slaughters and given to Mr. Smith. No instructions as to what was to be done with the Illinois certificate of title were given to the defendant by the plaintiff. Delivery of the Ford automobile was made on September 12, 1955, by the defendant to the Slaughters. On September

577

13, 1955, plaintiff's agent gave its check for $1990, payable to the defendant and received the conditional sales contract and promissory note covering the Ford automobile, with assignment and endorsement "without recourse" executed by the defendant to the plaintiff.

On October 3, 1955, the defendant executed First Assignment of Manufacturer's Statement of Origin to a Motor Vehicle to Evelyn Grunst and also prepared the application for certificate of title in the name of Evelyn Grunst. The First Assignment and application for certificate of title was mailed by the defendant to the Secretary of State who, on October 13, 1955, mailed a certificate of title to the Ford automobile to defendant who, on October 15, 1955, affixed its "paid" stamp showing the lien of defendant in the amount of $1530.48 as paid. This certificate of title was delivered to Mrs. Slaughter. On November 17, 1955 she made a payment to plaintiff on the conditional sales contract and note of $157.86. On November 16, 1955, Mrs. Slaughter sold the Ford automobile to C. Herman Auto Sales, Inc., for $900 and executed the assignment of title to the latter showing no lien and signed "Evelyn Grunst." The automobile was subsequently sold by C. Herman Auto Sales, Inc., to Herman Lohndorf. On inquiry when the account became delinquent, Mrs. Slaughter informed the plaintiff's agent that she had sold the automobile. On January 19, 1956, plaintiff discovered that the lien represented by the conditional sales contract was not on the certificate of title. The plaintiff has received no further money on the conditional sales contract or the promissory note. In January, 1956, Mrs. Slaughter told a representative of plaintiff that the reason she sold the car was because her husband was in trouble and the money was needed to keep him "out of jail." At the time of the trial Mrs. Slaughter was divorced.

The conditional sales contract and promissory note of the Slaughters, executed by them on September 12, 1955, contains the following provision: "That said property (which shall remain personal property) shall remain titled in seller until paid." The contract retained the title to the automobile in the defendant until it was fully paid. The defendant had title to the automobile. On September 13, 1955, the defendant sold all its right, title and interest in and to the automobile by executing the assignment (without recourse) which stated: "For Value Received, the undersigned hereby sells, assigns and transfers all his [her] right, title and interest in and to this instrument and in and to the property described herein, to Westlake Finance, its successors and assigns, without recourse, however, except as may be provided for otherwise below." Examination of the assignment shows that it is without recourse excepting as set forth, and nowhere in these exceptions is the delivery of a certificate of title to the automobile required or mentioned. The defendant did not choose plaintiff to finance the Slaughters' deal. The evidence shows that plaintiff was selected by the Slaughters. The defendant was willing to do business with the plaintiff so long as its liability was restricted. Plaintiff at no time gave the defendant any instructions as to the certificate of title. The assignment was the contract between the plaintiff and the defendant. By the assignment the defendant conveyed its right, title and interest to the Ford automobile to the plaintiff. Section 3 of the Uniform Sales Act (Sec. 3, Ch. 121½, Ill. Rev. Stat. 1957) reads: "Subject to the provisions of this act and of any statute in that behalf, a contract to sell or a sale may be made in writing (either with or without seal), or by word of mouth, or partly in writing and partly by word of mouth, or may be inferred from the conduct of the parties." When the defendant completed the

first assignment and application for certificate of title, it was conforming to the wishes of Mrs. Slaughter.

■■ The assignment of the conditional sales contract for the sale of the automobile which contained no provisions concerning delivery of a certificate of title to the assignee was not invalid because of failure to comply with the provisions of Sections 1 to 20 of the Uniform Motor Vehicle Anti-Theft Act (paragraphs 74 to 93, Ch. 95½, Ill. Rev. Stat. 1957). The assignment (without recourse) and the promissory note was the document selected by the plaintiff to transfer the title to the property described in it. Plaintiff had it prepared by its own employees and it was executed by the Slaughters at the office of plaintiff. Examination of the assignment and promissory note shows no requirement that a certificate of title should be obtained. The decisions in this state hold that the provisions of the Uniform Motor Vehicle Anti-Theft Act (Pars. 74–93, Ch. 95½, Ill. Rev. Stat. 1957) do not invalidate the written contract, are not intended as recording statutes, and do not change the effect of the provisions of the Uniform Sales Act. See L. B. Motors, Inc. v. Prichard, 303 Ill. App. 318; Pageanas v. Mixon Motor Co., 344 Ill. App. 446; Mori v. Chicago National Bank, 3 Ill.App.2d 49; Smith v. Rust, 310 Ill.App. 47; Commercial Credit Corp. v. Horan, 325 Ill. App. 625.

■■ The plaintiff urges that the doctrine of estoppel, because of the fraudulent and improper acts of the defendant, precludes both the defendant and plaintiff from prevailing over a bona fide purchaser for value, without notice, and that the defendant as assignor is liable to plaintiff as the assignee. The wrongful act in disposing of the automobile was done solely by Evelyn Slaughter. She testified that she never returned to the place of business of the defendant after the purchase of the automobile on September

12, 1955. There is no evidence to indicate that the defendant had anything to do with the subsequent sale of the automobile by Mrs. Slaughter. Nowhere in the assignment of the contract is there any provision for the defendant to obtain or furnish a certificate of title. Plaintiff had the choice of requesting a certificate of title. It cannot charge its ignorance regarding a certificate of title to the defendant when the choice of obtaining one or not was exclusively under its own control. A certificate of title is not a prerequisite to a valid sale. Mori v. Chicago National Bank, 3 Ill.App.2d 49, 56. There is no evidence of any fraudulent or improper acts committed by the defendant. The doctrine of estoppel cannot be invoked under the factual situation presented by the record. The decree absolved C. Herman Auto Sales, Inc., and Herman Lohndorf and dismissed them as parties defendant. There has been no separate or cross-appeal by the plaintiff from this part of the decree. The discussion of the doctrine of estoppel is based on a hypothetical situation.

■ All of the terms of the written contract by and between plaintiff and defendant were embodied in the executed assignment of the conditional sales contract and note and the contract could not be altered by parol evidence to show additional terms or provisions than those set forth in the assignment and note. There is no proof of any fraud. The documents received in evidence as exhibits introduced by the plaintiff, executed subsequent to September 13, 1955, were admissible against the Slaughters. These documents however were not competent to alter or add to the written contract entered into between plaintiff and defendant on September 12, 1955.

The defendant treated the transaction as a cash sale. It took positive action to retain title to the automobile until the check from plaintiff was honored. After the

581

assignment of the conditional sales contract and endorsement of the promissory note to the plaintiff and the latter's check had been honored, the defendant no longer had any lien or interest in the automobile, and in the absence of any specific instruction from the plaintiff it stamped its lien "Paid in full." When the defendant stamped the certificate of title "Paid in full" on October 15, 1955, it was stating a fact. The defendant could not give a receipt for any debt due to the plaintiff and any receipt by the defendant would not affect the rights of the plaintiff. There is no evidence that at the time the conditional sales contract was purchased by the plaintiff that the defendant had any knowledge of any fact which might impair the validity of the instrument or render it valueless. The buyers' true names were signed on the "instrument." The "instrument" was a valid lien upon the automobile.

For the reasons stated the judgment of the Superior Court against the defendant is reversed and the cause is remanded with directions to enter judgment in favor of Oak Park Motors, Inc., a corporation, and against Westlake Finance Company, a corporation.

Judgment reversed and cause remanded with directions.

FRIEND, P. J., concurring.

BRYANT, J., dissenting.

It is true that there is no evidence that plaintiff ever gave any instruction to defendant in regard to the issuance of the certificate of title, as is said in the majority opinion. It is also true, as is said there, that the assignment does not specifically contain any provision requiring defendant to obtain or furnish a certificate of title to plaintiff. These facts do not appear to me to be controlling, and, indeed, they are scarcely

persuasive. It is the conduct of the parties and the realities of the transaction which I believe determine the liability here.

Defendant was engaged in the business of selling automobiles. By these transactions it sold one new Ford Mainline automobile. With the exception of $10.55 all the cash received by defendant for that Mainline automobile was furnished by plaintiff—$1995. Defendant also received an old Plymouth, which was turned in by the purchaser and for which credit was given. That $1995 was furnished by plaintiff to defendant as consideration for the purchase of the automobile. The method of operation, that the conditional sales contract which defendant took from its purchaser was assigned by defendant to plaintiff, does not change the fact that plaintiff's cash furnished the consideration whereby defendant sold its automobile to its customer.

The principal transaction here was the sale of a Ford by defendant, a Ford dealer, to its purchaser. All of the events concerning this transfer of title, the advancing of credit, and the registration of the automobile are auxiliary to and part and parcel of that transaction. Although a day or a few days intervened between the steps, they must be regarded as one simultaneous and integrated transaction.

The only security which plaintiff had for the advancing of the $1995 was the Ford Mainline automobile sold by defendant to its customer. When defendant's assignment had been made and plaintiff's check had been delivered, the title to the automobile was vested in plaintiff. Defendant knew that. Defendant knew it had been fully paid. Defendant knew it had no interest whatever in that automobile.

Despite that knowledge, at the time of its assignment to plaintiff and of the delivery of the automobile to defendant's customer, defendant had its customer

583

sign in blank an application for a certificate of title to the automobile in question. Thereafter defendant filled out that application for a certificate of title, falsely showing title to be in its purchaser, not in its assignee, as was the fact. More importantly, defendant on that application also listed as the only encumbrance thereon an encumbrance for an entirely different amount, $1536.48 allegedly due defendant. At the time there was nothing owing defendant in regard to that car. No mention of plaintiff's interest was made, though that interest was well-known to defendant. The reason for defendant handling the application for the certificate of title was that defendant was required to furnish the certificate of origin for this new automobile. Subsequently defendant forwarded this certificate of origin, together with this false application for registration of title, to the Secretary of State, and there was issued a certificate of title in accordance with the application. It showed that the purchaser under the conditional sales contract, which had not been paid up and which defendant knew had not been paid up, but was outstanding and had been assigned to plaintiff, was the owner of the automobile, and that it, defendant, had a lien against the automobile, which it did not have.

That certificate of title was returned in accordance with the instructions of defendant to defendant. It thereupon stamped as paid its lien against the automobile. Obviously defendant had no money coming from the automobile. It had been paid in full by plaintiff. It had had no money coming at the time it made the application saying it had a lien. After relieving the automobile from a lien which did not exist by stamping it paid, it delivered the certificate of title to its purchaser. That certificate then showed title in its purchaser, which defendant knew was not true, because the title was in its assignee. It also showed

the title free of all liens, which defendant knew was false. It is obvious that plaintiff had no knowledge of defendant's conduct relating to the certificate of title. All of these transactions up until this time were part and parcel of the sale of the automobile by defendant to the purchaser and its financing through plaintiff.

Thus armed, the purchaser went out and sold an automobile for which she did not have title and in which her interest was encumbered, but to which she had a certificate of title showing that the automobile belonged to her and was unencumbered, to a third party who was a bona fide holder for value, and it was sold again. Plaintiff was thereby deprived of its security.

It appears to me that we should look beyond the question of where the title to the automobile actually rested after the assignment and the duty of the assignee to protect its interest in regard to the issuance of the certificate of title, the technical requirements of the Registration Act, and the fact that the statute requiring a certificate of title is not a recording act, the certificate being merely to evidence title for the purpose of protection against theft, and recognize the unity of this transaction and admit that certificates of title are the papers held in the hands of automobile owners, usually to evidence the fact that they are the owners of those automobiles.

The assignment without recourse signed by defendant contains a warranty in the following language: "That the undersigned has no knowledge of any fact which might impair the validity of said instrument or render it less valuable or valueless." If this transaction is considered as one simultaneous transaction, certainly defendant did have knowledge of a fact which would come within the warranty. It was a fact which defendant itself created during the course of the transaction.

There remains the question of fraud in this entire transaction. Fraud sounds in deceit and the absence of good faith and fair dealing.

The general nature of fraud is discussed in 19 I. L. P. Fraud, Section 2, p. 552:

" 'Fraud,' in its general sense, comprises all acts, omissions, and concealments involving a breach of legal or equitable duty, trust, or confidence, resulting in damage to another."

And the essential elements of actual fraud are set forth, ibid., in Section 3, p. 555; as: "The misrepresentation or concealment of an existing material fact, coupled with scienter, deception and injury."

With those general principles of fraud in mind, let us consider this transaction.

What is the essential and material fact that caused plaintiff's damage in this transaction? The fact is that the certificate of title did not correctly set forth the interest of plaintiff in the automobile. Defendant created that fact. That the certificate of title did not set forth plaintiff's interest in the automobile was material to plaintiff and to the entire transaction.

Defendant created the falsehood. It can hardly be claimed that it did not have knowledge.

Inherently, nobody else had knowledge. Defendant did not disclose the situation to plaintiff.

Plaintiff would not have paid $1995 to defendant for the assignment of defendant's conditional sales contract if it had known that defendant was not going to set forth correctly its claim against the automobile in question.

When the certificate of title did not set forth plaintiff's interest, plaintiff was damaged. His security was at least impaired, if not destroyed.

Defendant then compounded the deceit and fraud. It stamped and marked paid its always non-existent lien, which it had falsely said that it held. The cer-

tificate then showed the automobile free of all encumbrances. Defendant then delivered this certificate, which it knew to be a fraud, to its purchaser. For all practical purposes plaintiff's security was destroyed.

The fact that the ultimate consummation of plaintiff's damages rested not with defendant, but with the person to whom defendant had delivered the false certificate of title, should not be used to relieve defendant from the responsibility of its own acts.

The relationship between the parties here clearly placed upon defendant the obligation to set forth truthfully the right of plaintiff to the automobile in the application for the certificate of title.

The conduct of defendant with plaintiff rests in deceit and lacks any vestige of good faith or fair dealing. This situation comes within the classical descriptions of fraud. It is my opinion that the judgment of the lower court should be affirmed.