(No. 35317.—

WESTLAKE FINANCE COMPANY, Appellant, *vs.* OAK PARK MOTORS, INC., *et al.*—(OAK PARK MOTORS, INC., Appellee.)

*Opinion filed March 31, 1960.*

LOUIS P. YANGAS, and ALBERT E. BENNETT, both of Chicago, for appellant.

Edward P. McKeown, and Raymond J. Boland, both of Chicago, for appellee.

Mr. Justice Klingbiel delivered the opinion of the court:

Plaintiff-appellant sued Oak Park Motors Inc. and others in equity to adjudicate its rights and interest in a certain automobile and for damages it sustained resulting from the alleged wrongful conduct of defendants in respect thereto. The chancellor found the issues in favor of plaintiff and entered a decree in the nature of a money judgment against defendants in the sum of $2,234.04. Upon the sole appeal by defendant Oak Park Motors Inc., the judgment was reversed and the cause was remanded with directions to enter a judgment in favor of defendant and against the plaintiff. (20 Ill. App. 2d 575.) We granted plaintiff's petition for leave to appeal.

The material facts are as follows: The defendant Oak Park Motors Inc. is engaged in the business of selling automobiles and the plaintiff is in the business of buying conditional sales contracts and notes from automobile dealers in connection with the sale of automobiles to the general public.

On September 12, 1955, Oak Park Motors sold to defendants Evelyn Slaughter and Donald Slaughter, her husband, a new Ford "Mainline" automobile. The price was $2,283.05. She owned a 1950 Plymouth, which was registered in her maiden name of Evelyn Grunst, and which she turned in on the sale, receiving a credit of $372.50. She paid down in cash the sum of $10.55 leaving a balance due on the new Ford of $1,900.

Plaintiff agreed to finance this purchase and accordingly, on the 13th day of September, 1955, it delivered to Oak Park Motors its check for $1,995, the extra $95 being a commission paid by plaintiff to defendant for the privilege of buying the paper. This check was deposited by

defendant in its bank and the record shows it was paid on September 16, 1955. At the same time the conditional sale contract and the note of the Slaughters were assigned to plaintiff by defendant Oak Park Motors and by it delivered to plaintiff. On the previous day defendant had obtained the signature of Evelyn Slaughter on an application for a certificate of title for a new motor vehicle in blank signed by her in the name of Evelyn Grunst. She wanted to keep and use on the new car the 1955 plates issued to her in her maiden name on the Plymouth. Delivery of the Ford was then made to her by defendant.

On October 3, 1955, the defendant executed the "First Assignment of Manufacturer's Statement of Origin to a Motor Vehicle" to Evelyn Grunst and also prepared the application for a certificate of title for a new motor vehicle in her maiden name of Evelyn Grunst. In the blank following the words "kind of lien" it endorsed "cond. sales in favor of Oak Park Motors, Inc. 711 Madison St., Oak Park, Ill. amount $1530.48," This was mailed by defendant to the Secretary of State who, on October 13, 1955, mailed a certificate of title to the Ford automobile to defendant which, on October 15, 1955, affixed its "paid" stamp showing the lien of defendant in the sum of $1,530.48 as paid. The certificate of title was then delivered to Mrs. Slaughter by defendant. She made a payment to plaintiff of $157.86 on the conditional sales contract and the note, on November 17, 1955. The day before she had sold the Ford automobile to an automobile dealer for $900, who in turn sold it to a customer for value and without notice of any defects in the title thereof. These purchasers respectively were made parties defendant to plaintiff's complaint, but upon the hearing were dismissed by the court as not liable. Not until January 19, 1956, did plaintiff discover that its lien was not endorsed on the certificate of title.

Based upon the foregoing facts plaintiff sought recovery of its loss from defendant, charging *inter alia* in its com-

plaint that the aforesaid acts of defendant Oak Park Motors and the individual defendants were willful and which they knew or should have known were wrongful, illegal and improper, and prayed not only for the recovery of its actual damages but also asked for the assessment of exemplary damages against the defendants for the injuries sustained by plaintiff, as a result of their fraudulent and improper acts.

Defendant does not deny the commission of any of its acts in connection with this transaction, but in its brief lays the consequences thereof at the doorstep of the plaintiff, saying: "The obtaining of a Certificate of Title was under the exclusive control of the plaintiff; it could have gone to the defendants, Donald and Evelyn Slaughter, and requested the Certificate of Title; it did nothing. The lien of the conditional sale contract became valueless after the date of the assignment of the conditional sale contract and promissory note, to wit: September 13, 1955, only by reason of the plaintiff's own conduct, its own failure to provide for such before it purchased the assignment; its failure to take any steps to obtain one after its purchase. The condition which gave rise was its own decision; it should have used due diligence and exercised reasonable care to avoid the consequences of its acts."

This view was adopted in the majority opinion of the Appellate Court but was rejected in the dissenting opinion, which observes that: "It is true that there is no evidence that plaintiff ever gave any instruction to defendant in regard to the issuance of the certificate of title, as is said in the majority opinion. It is also true, as is said there, that the assignment does not specifically contain any provision requiring defendant to obtain or furnish a certificate of title to plaintiff. These facts do not appear to me to be controlling, and, indeed, they are scarcely persuasive. It is the conduct of the parties and the realities of the transaction which I believe determine the liability here.'

We are in accord with the latter view, under the peculiar facts and circumstances in this case. It is not disputed that it was the duty and responsibility of defendant to comply with the provision of section 3a of the Uniform Motor Vehicle Anti-Theft Act (Ill. Rev. Stat. 1955, chap. 95½, par. 76a,) which requires every manufacturer selling a new motor vehicle to a dealer for resale to deliver a certificate showing the name of the dealer, the date of transfer of, and the serial number, name and model of the car clearly and completely identifying the vehicle. This is known as "Manufacturer's Statement of Origin to a Motor Vehicle." The law further requires this form to be accompanied by what is designated as a "First Assignment" to be executed by the dealer, by means of which the dealer transfers the "Statement of Origin" and the motor vehicle described therein to the purchaser, and therein the dealer is required to give the name and address of the purchaser and incorporate a statement that the vehicle is new and has not been registered in this or any other State, and warrants the title of said motor vehicle at time of delivery, subject to the liens and encumbrances, if any, as set out below. The form then calls for a statement as to the amount of lien, date of lien, to whom due and the address of the lien-holder. Section 4 of said act provides that the aforesaid certificate shall be accompanied by an application for a certificate of title for a new motor vehicle. Such application shall include a bill of sale or a statement of transfer by the seller and of any lien retained by such seller.

The defendant performed the following acts: On October 3, 1955, it executed the "First Assignment of Manufacturer's Statement of Origin to a Motor Vehicle" to Evelyn Grunst and also filled in the blanks in the application for a certificate of title in her name, which she had signed in blank and left with defendant on September 12, 1955. The "First Assignment" recited that it, the defendant, was the holder of a lien on said vehicle dated Septem-

ber 12, 1955, in the sum of $1,530.48. The application for the certificate of title, among other things, sets forth that the vehicle was subject to the lien of a conditional sale in favor of Oak Park Motors, Inc., in the amount of $1,530.48. These documents were mailed to the Secretary of State who, on October 13, 1955, mailed a certificate of title to defendant, as requested by defendant in the application. However, on October 15, 1955, the defendant stamped the lien shown on the certificate "paid" and then delivered the certificate of title to said Ford to Mrs. Slaughter. Thus armed with this certificate of title showing no liens thereon she later disposed of the car to a *bona fide* purchaser for value without notice of any rights therein of plaintiff and thus precipitated this litigation.

. We will now recur briefly to some undisputed facts in the record. On September 12, 1955, the lien reserved in the conditional sales contract of Oak Park Motors, Inc. to the Ford in question was duly assigned and transferred to the plaintiff. In consideration thereof, it paid defendant $1,995, practically all the cash defendant received for the sale of the car. Such payment was made by a check of plaintiff dated September 13, 1955, payable to the order of defendant. The record shows this check was paid to defendant on September 16, 1955. It is therefore perfectly clear that on October 3, 1955, defendant had no lien on this vehicle for $1,530.48 or in any other amount. The only lien in existence at that time on this car was the lien of plaintiff for $2,391.90. Defendant knew this. It had accepted plaintiff's money, when it assigned and transferred unto plaintiff the conditional sales agreement and the promissory note of the Slaughters. Despite these facts, defendant stamped the lien as shown on the certificate with the word "paid."

By delivering to Mrs. Evelyn Slaughter possession of the car and the certificate of title showing no existing lien thereon, defendant gave her an opportunity to perpetrate

a fraud upon the plaintiff. (*Drain* v. *La Grange State Bank,* 303 Ill. 330.) Under such circumstances, defendant could reasonably have foreseen that plaintiff's lien might be destroyed. Regardless of whether the misstatements were intentional or were the result of mere mistake or inadvertence liability must follow, under the familiar doctrine that where one of two innocent persons must suffer, he should bear the burden whose conduct induced the loss. (*Mori* v. *Chicago National Bank,* 3 Ill. App. 2d 49; *Dombro* v. *Hugo,* 370 Ill. 381.) The loss suffered by plaintiff can be directly traced to the wrongful conduct of the defendant in the premises. We can reach no other conclusion in this case than that reached by the chancellor, and in reversing his decree the Appellate Court clearly erred.

The judgment of the Appellate Court is reversed. and the decree of the superior court of Cook County is affirmed.

*Appellate Court reversed; superior court affirmed.*